508 P.2d 731

The STATE of Arizona, Appellee,

v.

Melvin Lee TAYLOR, Appellant.

No. 2295.

Supreme Court of Arizona,

In Banc.

April 2, 1973.

268

Gary K. Nelson, Atty. Gen., by William J. Schafer, III, and Mary Z. Chandler, Asst. Attys. Gen., Phoenix, for appellee.

Flynn, Kimerer, Thinnes & Galbraith by John J. Flynn and Tom Galbraith, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant, Melvin Taylor, from jury verdicts and judgments of guilty to the crimes of murder, § 13–451 et seq. A.R.S. and a sentence of death thereon; assault with a deadly weapon, § 13–249 et seq. A.R.S. (two counts); robbery, § 13–641 et seq. A.R.S. (two counts), with a sentence as to each of the four counts of not less than forty years nor more than life imprisonment, said four terms to be served concurrently.

Although the trial of the defendant Taylor was consolidated with that of the codefendant Ray Chatman, we believe that each defendant should be treated separately on appeal to avoid confusion between the different allegations of error made by the separate defendants and their different counsel.

We are called upon to answer the following questions on appeal:

A. As to the jury:

1. Was the jury constitutionally infirm because of the exclusion of jurors between the ages of 18 and 21 when at the same time individuals between the ages of 18 and 21 were eligible voters under the statutes of the United States?

2. Was there constitutionally impermissible racial discrimination in the selection of the jury panels wherein only two out of 125 jurors called for the panel were negroes?

3. Does the simultaneous determination by the jury of both guilt and punishment violate the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and the due process clause of the Arizona Constitition [A.R.S.]?

B. As to the trial itself:

1. Were the pretrial identification procedures so prejudicial and suggestive as to taint the in-court identification of the defendant Taylor by Ida Long?

2. Did the refusal of the trial court to permit Officer Matthews to testify to statements made to him by Ida Long immediately following the incident deny the appellant his right to effective cross-examination?

3. Did the trial court's refusal to give any jury instructions on the elements of identity constitute reversible error?

4. Did the allegedly "highly inflammatory and prejudicial closing argument" by the prosecutor deny the defendant his constitutional right of confrontation and cross-examination under the Sixth Amendment to the United States Constitution?

The defendant also raised questions concerning the constitutionality of the death penalty which was imposed in this case. Since this trial, the United States Supreme Court, in the case of Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed. 2d 744 (1972), has indicated that the death penalty is contrary to the cruel and unusual punishment section of the Eighth Amendment of the United States Constitution and we do not need to consider in this appeal questions relating to the death penalty.

The facts necessary for a determination of this matter on appeal are as follows. On 7 March 1970, between 8:30 and 9:00 p. m., two young negro males, one armed with a pistol and the other with a rifle, entered a Circle K convenience market located at 602 West Baseline Road in the City of Phoenix, Maricopa County, Arizona. There were seven persons present at the time: two clerks on duty, Ida Long and her sister, Barbara Toland; a stock boy, Kenneth Meiner; customers consisting of Mr. and Mrs. Theodore Homer and their two sons, ages 17 and 14. The two suspects ordered all persons to the floor and demanded the money in the cash drawers. It is disputed as to what the stock boy,

Kenneth Meiner, did at this time, but in any event shots were fired and Kenneth Meiner died shortly thereafter from a small caliber bullet wound in the chest. The two suspects then took the money from the cash drawers of the register and fled. One witness, Francis Homer, age 14, indicated that he heard a car leave at a high rate of speed from behind the store. The police were called and two City of Phoenix police officers immediately responded. At the time of their arrival only the two clerks, Ida Long and Barbara Toland, were present with the deceased. The Homer family had departed. A description from Ida Long was obtained and broadcast to law enforcement officials. The other clerk, Barbara Toland, was unable to furnish a description at that time. Shortly thereafter, a second description was obtained from the clerk, Ida Long. She described the one carrying the pistol (later identified as the defendant Taylor) as a negro male, 22–25 years old, 5'3" tall, 120 pounds, medium build and medium complexion, and wearing a white Navy hat with the brim pulled down and being the shorter of the two. She described the one carrying the rifle (later identified as the defendant Chatman) as being a negro male, 22–23 years old, 5'7"–5'8" tall, 180 pounds, wearing a brownish red shirt and a darker shade of work pants. The defendant Taylor is 5'9", 147 pounds, dark complexion, and the codefendant Chatman is 5'8", 133 pounds.

On 9 March, detectives assembled two groups of photographs of young negro males including the defendant Taylor and displayed them to Ida Long, both during the day and later that evening. Mrs. Long was unable on either occasion to select any of the pictures as resembling the robbers.

As a result of their investigation, the detectives obtained a potential identification from a 13 year old boy, Curtis Whaley. Whaley selected the photographs of the two defendants whom he had known previously. Curtis Whaley told the officers that he had been in front of the Circle K Market during the evening of 7 March and saw Ray Chatman and Melvin Taylor in front of the market. Whaley said that Chatman was wearing a black sleeveless basketball shirt and Taylor a sailor-type hat.

Pictures of the two defendants were enlarged and with similar sized pictures of seven other negro males were displayed to Ida Long, and Mrs. Long selected the picture of Ray Chatman as the taller suspect carrying the rifle, but did not identify the picture of the defendant Taylor which was included in the group of pictures which she examined. The same groups of photographs were exhibited to Francis Homer and he selected Ray Chatman as resembling the suspect with the rifle, but did not identify the defendant Taylor, although he did identify another person as being the suspect with the pistol. At this point it is important to note that the person he did identify was the brother of the witness, Curtis Whaley. Pictures were also shown to Barbara Toland who selected the picture of the defendant Taylor as being similar to the person who came into the store 20 to 25 minutes before the robbery wearing a white sailor hat. She was unable to identify the defendants Taylor or Chatman as persons who committed the robbery.

Warrants were issued for the arrest of Chatman and Taylor and the defendant Taylor surrendered himself to the police. A lineup was immediately formed and the defendant was placed in the lineup with five other young negro males, two of whom had "afro" or "natural" hairdos as did the defendant, and three who did not. The witnesses, Ida Long, Barbara Toland, Mabel Homer, Francis Homer, and Ronald Homer were each asked separately to view the lineup. Barbara Toland identified the defendant Taylor as the one with the white sailor hat who came into the market prior to the robbery. Ida Long identified the defendant Taylor as the person with the white sailor hat who had come into the store before the robbery. Mabel Homer, Francis Homer, and Ronald Homer identified another man as one of the robbers. At the trial, Ida Long, Barbara Toland,

and Curtis Whaley all identified the defendant Taylor as being present either before or during the robbery.

The defendant Taylor did not testify in his own behalf. The codefendant Chatman offered evidence of alibi and called numerous witnesses in support of his defense. He also testified and denied any knowledge of the crime.

The jury returned a verdict of guilty as to all counts including first degree murder and assessed the penalty of death. From a judgment on the verdict and a sentence of death and 40 years to life as to each of the other four counts, defendant Taylor brings this appeal.

## A. AS TO THE JURY

### 1. EXCLUSION OF 18 TO 21 YEAR OLD JURORS.

■ Trial in this matter was held in December of 1970 and at that time the Arizona Revised Statutes required that a person to be a registered voter must be 21 years or more of age. § 16–101 A.R.S., as amended, Laws, 1970.

Arizona statutes and case law provide that the jury lists shall be selected at random from voter registration lists, § 21–301, subsec. A A.R.S.; State v. Mahoney, 106 Ariz. 297, 475 P.2d 479 (1970), cert. den. 401 U.S. 917, 91 S.Ct. 898, 27 L.Ed.2d 818 (1971); State v. Narten, 99 Ariz. 116, 407 P.2d 81 (1965), cert. den. 384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966). The jury commissioner is to be provided with the list not later than 1 January following each biennial election. This list is to be updated each six months. § 21–301, subsec. B A.R.S.

In the spring of 1970, the Congress of the United States amended the Voting Rights Act of 1965 providing that citizens 18 years of age or older could be electors. Pub.L. No. 91–285, Title III, § 302, effective 1 January 1971, 84 Stat. 318, 42 U.S.C.

1973 bb–1 (1970).[1] It is asserted by defendant that where a substantial body of individuals, those 18 years old, have been by class excluded from prospective jury duty, a prima facie showing of discrimination has been made. We do not agree. The jury list used in the present case was lawfully selected even though at the time the jury list was compiled 18 year olds were excluded. Periodic (6 month) updating is proper and not prejudicial to those voters, including young adults, who have qualified to vote in the interim. United States v. Kuhn, 441 F.2d 179 (5th Cir. 1971). We agree with the North Carolina court in a similar case:

> "The absence from the jury list of the names of persons between the ages of eighteen and twenty-one for the short period of time here complained of is not unreasonable, and does not constitute systematic and arbitrary exclusion of this age group from jury service." State v. Cronell, 281 N.C. 20, 37, 187 S.E.2d 768, 778 (1972).

We find no intentional, arbitrary or systematic discrimination against 18 to 21 year olds from serving on the jury at this time and the fact that there was an understandable delay in implementing the requirement that 18 year olds and over be placed on the voter registration list did not invalidate a jury list taken from the voter roles prior to the time voters 18 to 21 were allowed to register.

### 2. WAS THERE RACIAL DISCRIMINATION IN THE EXCLUSION OF NEGRO JURORS?

■ It is contended that because the Bureau of Census indicates that there are 3.4% negro citizens in the population of Maricopa County and that in a panel of 125 jurors there were only two negroes instead of four as defendant contends should have been present, there was a prima facie case of racial discrimination and an unrep-

1. It is noted that this statute became effective after the trial in this case and therefore is not applicable. Because of the importance of the question presented however, we will answer it at this time.

resentative jury panel in violation of Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967) and Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). We do not agree. A defendant is not entitled to a jury which is composed of, with mathematical precision, the exact proportion of his race as exists in the general population. All that is required is a jury selected by a process where the members of his race are not systematically excluded. Arsad v. Henry, 317 F.Supp. 129 (E.D.N.C.1970); United States v. Brickey, 426 F.2d 680 (8th Cir. 1970). We do not find herein a prima facie case of systematic exclusion of members of the defendant's race in the selection of the jury. See State v. Padilla, 107 Ariz. 134, 483 P.2d 549 (1971); State v. Kabinto, 106 Ariz. 575, 480 P.2d 1 (1971).

3. JURY DETERMINATION OF BOTH GUILT AND PUNISHMENT.

██ Next the defendant contends that the submission to the jury of both the questions of guilt and punishment in the case of murder at the same time violates the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and the due process clause of the Arizona Constitution.

The defendant contends that because the jury in this case determined both the punishment and the question of innocence or guilt, he did not receive equal protection of the law as the jury did not have access to the probation officer's report when punishment was determined as the judge would have if the defendant pleaded guilty, etc. The United States Supreme Court has held that it is nto unconstitutional for a jury to determine the sentence as well as the guilt of a defendant in a single trial procedure, see McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), and we do not find Arizona's procedure constitutionally infirm.

B. AS TO THE TRIAL ITSELF

1. PRETRIAL IDENTIFICATION PROCEDURES.

The defendant Taylor next contends that the pretrial identification was so unfairly suggestive as to deprive the defendant of due process of law.

██ The witness, Ida Long, was unable to identify the defendant Taylor from photographs shown to her on three separate occasions. In each of these instances, the witness Long was shown photographs of the defendant wearing an "afro" or "natural" hairdo. In the robbery itself, the defendant Taylor wore a sailor-type hat over his head. Ida Long was able to identify the defendant at the lineup. A picture before this court of the lineup indicates six male negroes, three with shorter type haircuts and three with "afro" or "natural" haircuts were present, and it is apparent that the subjects in the lineup were presented fairly and that it was not impermissively suggestive so as to give rise to a "very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968). We do not believe that the pretrial identification was unduly suggestive, or that the in-court identification was tainted. State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969). See also State v. Lang, 107 Ariz. 400, 489 P.2d 37 (1971).

2. REFUSAL OF THE TRIAL COURT TO PERMIT THE OFFICER TO TESTIFY AS TO STATEMENTS MADE TO HIM BY WITNESS LONG IMMEDIATELY FOLLOWING THE INCIDENT.

Defendant next contends that the court erred in refusing to permit Officer Carl Matthews to relate, on cross-examination, the description of the assaultant given by

Mrs. Ida Long fifteen minutes after the crime occurred:

"Q Officer, then I assume that you also discussed this with Mrs. Long; is that correct?

"A That I did.

"Q And was she able to give you a description of any kind?

"A Yes, she was.

"Q And what was that description?

"MR. BENNETT: Objection, your Honor, as being hearsay.

"MR. GARRETT: Does the Court wish that we be heard?

"THE COURT: Objection will be sustained."

The defendant obviously asked the officer about Mrs. Long's identification to show a discrepancy in her description to the police and her subsequent identification of the defendant in the lineup and in the courtroom. These questions were asked of the officer prior to the time Mrs. Long actually took the stand and while the answer to the question might be admissible on one or more grounds, it was not error to exclude the testimony at this state of the proceedings. The order of proof is largely within the discretion of the trial court. State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960); State v. Dowthard, 3 Ariz.App. 237, 413 P.2d 296 (1966). Also, the matter was covered by the testimony of Officer Villa later in the trial as to the description of the defendant given by Mrs. Long:

"Q At the time you arrived at the market, did you have occasion to speak with two women, a Mrs. Long and Mrs. Toland, that were clerks at that market on that evening?

"A Yes, sir.

\*   \*   \*   \*   \*   \*

"Q Did you also have a conversation with Mrs. Long?

"A Yes.

"Q And did you obtain a description of these two people from her?

"A Yes.

"Q Could you please tell us what descriptions you were able to obtain?

"A She said that one of them was Negro male, 22 to 23 years old, about five feet three inches tall, one hundred twenty pounds, with brown eyes, medium build, and medium complexion.

"Q Did she tell you that was the one carrying the pistol?

"A Yes."

In closing argument, the attorney for defendant discussed the misidentification at length and we believe the jury was adequately informed as to the discrepancy in the description by Mrs. Long of the defendant Taylor.

### 3. REFUSAL TO GIVE INSTRUCTIONS ON IDENTITY.

The defendant contends that since the case against the defendant pivots on the issue of identification, the refusal of the trial court to give specific instructions as to identity constituted reversible error.

The defendant Taylor requested two instructions concerning identity, one stating:

"The identity of the defendant must be proven with that degree of certainty that amounts to proof beyond a reasonable doubt."

The other would have directed the jury that they "\* \* \* must carefully consider these factors [of identity when] passing upon the credibility \* \* \* [of] the witness' testimony \* \* \*."

The trial court refused to give these specific instructions, but did instruct generally as follows:

"\* \* \* In determining the weight to be given to the testimony of any witness, you must take into account his ability and opportunity to observe, his memory, his manner while testifying, his reputation for truth and veracity, any motive, interest, bias or prejudice he may have, and the credibility of his testimony considered in the light of all the evidence in the case."

And:

"Evidence has been introduced that the defendant Melvin Taylor was not present at the time when and at the place where the alleged crimes were committed. This is a legal and proper defense. If, after consideration of all the evidence, you have a reasonable doubt whether the defendant was present at the time and place of the alleged crime, you must find him not guilty."

■■ The trial court has a duty to instruct on all matters of law reasonably supported by the facts developed during the trial. State v. Stevens, 107 Ariz. 565, 490 P.2d 571 (1971); State v. Ross, 107 Ariz. 240, 485 P.2d 810 (1971). When examining instructions for error on appeal we will consider the instructions as a whole, and where matters are adequately covered by other instructions it is not error for the trial court to refuse to single out a particular element of the case for special instruction. As we have stated:

"* * * The requested instruction on 'identification' would not have added anything to these general instructions given to the jury. The trial court's references to the presumption of innocence, the necessity of proving 'all material allegations,' and the credit to be given witnesses would certainly have meaning for the jury as applied to the testimony of the 'identity' witnesses. The weight to be given the testimony of such witnesses is a matter for the determination of the jury or court trying the case. (citations omitted)" State v. Corrales, 95 Ariz. 401, 404, 391 P.2d 563, 565–566 (1964).

■ We find no error in the failure of the trial court to give the requested instructions on identity.

## 4. IMPROPER CONDUCT BY THE PROSECUTOR DURING CLOSING ARGUMENT.

■ The defendant Taylor contends that the prosecutor in his final summation improperly argued to the jury by expressing his personal belief regarding the guilt of the defendant and also asserting his personal opinion as to the credibility of the State's witnesses. The jury was given the standard admonition by the court:

"Arguments and comments of counsel are intended to help you in understanding the evidence and applying the law. While arguments are not evidence, counsel may argue reasonable inferences from the evidence. If any comment of counsel has no basis in the evidence, you are to disregard that comment."

The defendant failed to object to the prosecutor's statement and neither did he move for a mistrial. While we do not condone what appears to be improper and unprofessional argument by counsel for the State, since the defendant did not object to the offending comment at trial, he cannot object to it now:

"We have carefully reviewed the allegedly improper statements by the prosecutor in this case. These statements cannot constitute a ground for appeal because any such ground has been waived by failure to make a timely objection. We note also that even though no objection was made, the jury was instructed that arguments of counsel are not evidence and further that 'if any comment of counsel has no basis in the evidence, you are to disregard that comment.' We believe that such instruction may well have corrected any prejudice which the prosecutor's statements may have created. See State v. Abney, supra [103 Ariz. 294, 440 P.2d 914], State v. Propp, 104 Ariz. 466, 455 P.2d 263 (1969)." State v. Adair, 106 Ariz. 58, 62, 470 P.2d 671, 675 (1970). See also State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955); State v. Maloney, 105 Ariz. 348, 464 P.2d 793 (1970); State v. Abney, 103 Ariz. 294, 440 P.2d 914 (1968).

A cautionary instruction was given. We find no error at this time and if there was it was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### DEATH SENTENCE

 The Supreme Court of the United States has held that the death penalty is contrary to the Eighth Amendment of the United States Constitution. Stewart v. Massachusetts, supra. We have the authority to reduce a sentence on appeal. § 13–1717, subsec. B A.R.S. The sentence is hereby reduced to life imprisonment.

### DOUBLE PUNISHMENT

Defendant was convicted of two counts of robbery, one of Ida Long and one of Barbara Toland, and of two counts of assault with a deadly weapon, one committed on Ida Long and the other on Barbara Toland.

Our statute reads:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." § 13–1641 A.R.S.

[13] We have applied the "identical elements" test in interpreting this section stating: "The practical test is to eliminate the elements in one charge and determine whether the facts left would support the other charge." State v. Mitchell, 106 Ariz. 492, 495, 478 P.2d 517, 520 (1970). In the instant case, it is clear that both the charge of assault with a deadly weapon and robbery cannot stand together. State v. Jorgenson, 108 Ariz. 476, 502 P.2d 158 (1972); State v. Belcher, 108 Ariz. 290, 496 P.2d 590 (1972); State v. George, 108 Ariz. 5, 491 P.2d 838 (1971).

"Our court has stated that where a person is convicted and sentenced on two counts based upon one act, that the trial judge should then set aside the lesser conviction. (citations omitted) In view of the fact that the sentences imposed herein are the same and are concurrent, it will not be necessary to remand for resentencing." State v. Mendoza, 107 Ariz. 51, 56, 481 P.2d 844, 849 (1971).

It is therefore ordered, with the issuance of the mandate herein, the conviction, judgment, and sentence for assault with a deadly weapon are reversed and set aside.

Affirmed in part, reversed in part.

HAYS, C. J., STRUCKMEYER and LOCKWOOD, JJ., and LEVI RAY HAIRE, Court of Appeals Judge, concur.

HOLOHAN, J., did not participate in the determination of this matter.