508 P.2d 739

The STATE of Arizona, Appellee,

v.

Ray CHATMAN, Appellant.

No. 2295.

Supreme Court of Arizona,
In Banc.

April 2, 1973.

Rehearing Denied May 22, 1973.

276

Gary K. Nelson, Atty. Gen., by William J. Schafer, III, and Mary Z. Chandler, Asst. Attys. Gen., Phoenix, for appellee.

Philip M. Haggerty and Murray Miller, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant Ray Chatman from jury verdicts and judgments of guilty to the crimes of murder, § 13–451 et seq. and a sentence of death thereon; assault with a deadly weapon, § 13–249 et seq. (two counts); robbery, § 13–641 et seq. (two counts), with a sentence as to each of the four counts of not less than forty years nor more than life imprisonment, the four terms to be served concurrently.

Although the trial of the defendant Chatman was consolidated with that of the codefendant Taylor, we believe that each defendant should be treated separately on appeal in order to avoid confusion among the different allegations of error by the separate defendants and their different counsel.

The defendant Chatman raises questions concerning the death penalty. Because of the action of the United States Supreme Court in declaring that the death penalty is

contrary to the cruel and unusual punishment section of the Eighth Amendment of the United States Constitution, Stewart v. Massachusetts, 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972), we will not consider death penalty related questions in this opinion.

We are called upon to answer the following questions on appeal:

1. Was the jury constitutionally infirm because of the exclusion of jurors between the ages of 18 and 21 when at the same time individuals between the ages of 18 and 21 were eligible voters under the statutes of the United States?

2. Where only two out of 125 jurors called on the panel are negroes, in a community in which the percentage of negroes is 3.4%, has there been a prima facie showing of racial discrimination in the selection of the jury panels?

3. Is it improper and reversible error to exclude a juror for alleged reasons of health and to substitute an alternate juror without allowing counsel an opportunity to inquire as to the reasons for the substitution?

4. Is it reversible error to bar and prohibit cross-examination of a material witness as to the witness' previous false testimony under oath?

5. Is it reversible error to permit cross-examination of a material witness as to errors possibly revealing motives for false testimony against one of the defendants?

6. Is it reversible error to refuse to allow cross-examination of the witness as to a description given by that witness immediately after the crime?

7. Were the pictures of the victim unduly inflammatory to the point of necessitating reversal?

8. Was it reversible error to refuse to give defendant's requested instructions as to the unreliability of eye-witness testimony?

9. Was it reversible error to refuse to give defendant's requested instructions on the State's failure to call a witness as being evidence to the fact that said witness would probably testify against the State?

10. Is it reversible error to refuse to give defendant's requested instruction on the jury's ability to consider the fact of a defendant's voluntary surrender as bearing upon his guilt?

11. Is it reversible error for the prosecuting attorney to inject his personal beliefs and feelings in statements to the effect that defendant is guilty into the closing argument?

12. Is it reversible error to the defendant Chatman for him to be tried with the defendant Taylor when defendant Chatman took the stand and testified and the defendant Taylor did not?

13. Is it reversible error to have consolidated the cases for trial when one of the defendants was identified in a line-up by the victim and the defendant Chatman was never placed in a lineup but was forced to go to trial on the basis of an in-court identification only?

The basic facts are the same as set forth in the case of State v. Taylor, 109 Ariz. 267, 508 P.2d 731 decided this day. The following additional facts are necessary for a determination of this matter on appeal. The defendant Chatman was never placed in a lineup though his picture was identified by the witness Ida Long prior to trial, as well as at the trial. She testified that Chatman was the individual with the rifle. She misdescribed the defendant Chatman immediately after the robbery.

The witness, Theodore Homer, was unable to identify the defendant either before trial by picture or in person. Francis Homer, age 14, selected Chatman's photograph as being one who looked like "one of the robbers" although he allegedly misdescribed the defendant Chatman prior to this time.

· Defendant in his brief points out that fingerprints at the scene and on the cash register were negative and the search of the homes of Taylor and Chatman obtained as a result of a warrant produced nothing incriminating.

The defendant Chatman surrendered himself to the police department and was turned over to the juvenile authorities where a hearing was held after which time the jurisdiction of the juvenile court was waived and the defendant Chatman ordered to stand trial as an adult.

At the trial, the defendant Chatman presented testimony showing that he was home watching television at the time of the robbery. The defendant Chatman also took the stand in his own behalf.

## EXCLUSION OF 18 YEAR OLD JURORS AND NEGROES FROM THE JURY PANEL

These questions have been disposed of in the case of State v. Taylor filed this day, and we do not repeat our discussion here.

■ Defendant, however, raises an additional issue alleging that the practice of the jury commissioner in summoning jurors by telephone discriminates against those of the lower economic classes, i.e., those who don't own a telephone. We have answered this question adversely to defendant in the case of State v. Mojarro Padilla, 107 Ariz. 134, 483 P.2d 549 (1971).

## SUBSTITUTION OF THE JUROR FOR HEALTH REASONS

■ In the instant case there were alternate jurors. One of the principal jurors became ill and a juror designated as an alternate juror was appointed to sit in his place. The trial court announced its action during the trial and the defendant raised no objection at that time. The defendant having failed to object at the time cannot raise the issue on appeal. State v. Hays, 100 Ariz. 371, 414 P.2d 745 (1966); State v. Hudgens, 102 Ariz. 1, 423 P.2d 90, cert.

den. 389 U.S. 873, 88 S.Ct. 162, 19 L.Ed.2d 155 (1967). See also LeRoy v. Phillips, 8 Ariz.App. 524, 448 P.2d 94 (1968).

## CROSS-EXAMINATION OF WITNESS REGARDING CREDIBILITY

■ Curtis Whaley, age 13, was one of the important witnesses in the case. The attorney for the codefendant Taylor attempted to cross-examine him concerning prior testimony in another case in which his sister was charged with homicide at which time he allegedly testified falsely. The codefendant Taylor also attempted to show that Whaley's brother and the defendant Chatman had been in trouble together but that Whaley's brother had gone to Fort Grant and Chatman had not which Whaley felt was unfair. After the offer of proof by the attorney for the codefendant Taylor, the attorney for defendant Chatman stated:

"* * * Mr. Garrett and I represent separate interests. When he asks questions, he's asking it on behalf of Mr. Taylor. * * * I think if anything comes out about Ray Chatman's prior record in here, that we are right on the edge of mistrial. It's a juvenile adjudication, and I don't—for whatever reason Mr. Garrett's question may be allowed and the answer, I don't believe it opens the door for that sort of thing, because it's so highly prejudicial and so inadmissible."

While opposing the introduction of testimony by Whaley concerning Chatman's prior juvenile record, Chatman did join with Taylor in attempting to elicit testimony by Whaley at his sister's trial and about statements concerning such testimony to the two defense attorneys. We believe that the court did not abuse its discretion in refusing to allow impeachment on a collateral matter. State v. Mangrum, 98 Ariz. 279, 403 P.2d 925 (1965); State v. Gortarez, 98 Ariz. 160, 402 P.2d 992 (1965).

## CROSS-EXAMINATION OF WITNESS REGARDING PREJUDICE

The defendant next contends that of almost equal importance is the denial of the cross-examination of Curtis Whaley as to prejudice.

The defendant Chatman points out that Taylor asked Whaley about the commitment of Curtis Whaley's brother to Fort Grant because of previous difficulty he had had together with Ray Chatman. As stated in the previous question, this point was made by Taylor, and Chatman did not join Taylor in asking that this evidence be heard and he may not now complain that the evidence, even if it were admissible, was excluded.

## CROSS-EXAMINATION OF WITNESS AS TO DESCRIPTION GIVEN BY MRS. LONG IMMEDIATELY AFTER THE CRIME

This question has been covered in the companion case of State v. Taylor, 109 Ariz. 267, 508 P.2d 731 filed this day.

## INFLAMMATORY PICTURES

Defendant next contends that the admission of a series of pictures which were unduly gruesome was designed solely to inflame and incite the passions of the jury.

The defendants were willing and did stipulate to the fact that the deceased was killed, that it was a brutal murder, and objected to the admission of the photographs involved. The State offered in evidence some seven pictures of the deceased. Six were admitted in evidence. Exhibit 20, a picture of the deceased taken while at the mortuary, was admitted without objection. Exhibits 7, 8, and 9 showed the deceased in the position in which he was found on the floor as well as after he had been turned over to show the fact that the bullet had not exited. Exhibit 14 showed the deceased turned over with bruises on his face, allegedly to show that the defendant was beaten with a gun in addition to being shot.

We have stated:

"* * * Where as here there was substantially no controversy concerning the commission of the offenses, there was no significant reason for their admission into evidence. The photographs were highly inflammatory, without any particular saving purpose, and could only have tended to prejudice the defendant in the minds of the jurors. * * *" State v. Makal, 104 Ariz. 476, 478, 455 P.2d 450, 452 (1969).

But we still hold that if the photographs have any probative value either as to the determination of guilt or innocence or as here where the death sentence was being asked as to the punishment, we will not disturb the discretion of the trial court:

"* * * If the photographs have any bearing upon any issue in the case they may be received although they may also have a tendency to prejudice the jury against the person who committed the offense. The discretion of the trial court will not be disturbed on appeal unless it has been clearly abused. (citations omitted)." State v. Mohr, 106 Ariz. 402, 403, 476 P.2d 857, 858 (1970).

We find no abuse of the trial court's discretion in admitting the photographs of the deceased in this case.

## FAILURE TO GIVE REQUESTED INSTRUCTIONS

The defendant Chatman requested that the court give an instruction concerning eye-witness testimony. The defendant requested instruction No. 8 which reads as follows:

"No. 8. The evidence presented by the State has consisted almost solely of personal identification of the Defendant by eyewitnesses to the crimes charged. You are instructed that because of the normal and universal fallibility of human sense perception and human memory and the susceptibility of the human mind to suggestive influences testimony as to identity should be received with great caution."

We have stated:

"It is the opinion of this court that the probative value of direct and circumstantial evidence are intrinsically similar; therefore, there is no logically sound reason for drawing a distinction as to the weight to be assigned each. * * *." State v. Harvill, 106 Ariz. 386, 391, 476 P.2d 841, 846 (1970). See also State v. Godsoe, 107 Ariz. 367, 489 P.2d 4 (1971).

We find no error in refusing to give instruction No. 8. Defendant Chatman also requested additional instructions concerning identity. We have disposed of this matter in the companion case of State v. Taylor, 109 Ariz. 267, 508 P.2d 731 filed this day.

■■ The defendant also requested the instruction concerning an absent witness. The defendant did not show that he made an effort to call this witness, and, of course, the State does not have to call all the witnesses endorsed upon the information. State v. Jordan, 83 Ariz. 248, 320 P. 2d 446 (1958). We do not believe that the evidence supports the giving of this instruction.

■ The defendant also complains of the refusal of the court to give a nonflight or surrender instruction inasmuch as the defendant Chatman surrendered himself to the police when he found out he was wanted. This matter has previously been determined by this court:

"We see no prejudice to the defendant, in the trial court's refusal to give the instruction, since the jury is free to draw all reasonable inferences from the absence of flight, without specific instructions from the court. The matter is more properly one of argument." State v. Sorensen, 104 Ariz. 503, 509, 455 P.2d 981, 987 (1969).

Our Court of Appeals has stated:

"* * * When the court gives a proper instruction on presumption of innocence, there is no need for a non-flight instruction. In fact, some courts consider the giving of such an instruction an unallowable comment on the evidence * * *." State v. Bernal, 13 Ariz.App. 177, 180, 475 P.2d 6, 9 (1970).

We find no error in the giving of the instructions.

## AS TO THE JURY ARGUMENT

Defendant next contends that it was reversible error for the prosecuting attorney to inject his personal beliefs and feelings in statements to the jury.

We have discussed this matter previously in the case of State v. Taylor, 109 Ariz. 267, 508 P.2d 731 filed this day and we do not need to discuss it at this time.

## JOINDER

The defendant next complains that requiring the defendant Chatman to be tried together with defendant Taylor when Taylor did not take the stand and also when Taylor was identified in a pretrial lineup and Chatman was not was prejudicial to Chatman. We do not agree.

■ Joint trials of two defendants are provided for by our rules. Rule 254, Rules of Criminal Procedure, 17 A.R.S. Defendant Chatman did not timely request a separate trial and cannot raise this matter on appeal. State v. Betancourt, 107 Ariz. 212, 484 P.2d 632 (1971). Neither do we see a problem raised by the case of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as there was no conflict between the two defendants as to who committed the crime. Both defendants denied they committed the crime and did not implicate the other and there was no problem re cross-examination. Defendant's contention must fail.

## DEATH SENTENCE

■ After the judgment in this case, the Supreme Court of the United States held that the death penalty is contrary to the Eighth Amendment of the United States Constitution. Stewart v. Massachusetts, supra. We have the authority to reduce a sentence on appeal. § 13–1717,

subsec. B A.R.S. The sentence is hereby reduced to life imprisonment.

## DOUBLE PUNISHMENT

Defendant was convicted of two counts of robbery, one of Ida Long and one of Barbara Toland, and of two counts of assault with a deadly weapon, one committed on Ida Long and the other on Barbara Toland.

Our statute reads:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." § 13–1641 A.R.S.

We have applied the "identical elements" test in interpreting this section stating: "The practical test is to eliminate the elements in one charge and determine whether the facts left would support the other charge." State v. Mitchell, 106 Ariz. 492, 495, 478 P.2d 517, 520 (1970). In the instant case, it is clear that both the charge of assault with a deadly weapon and robbery cannot stand together. State v. Jorgenson, 108 Ariz. 476, 502 P.2d 158 (1972); State v. Belcher, 108 Ariz. 290, 496 P.2d 590 (1972); State v. George, 108 Ariz. 5, 491 P.2d 838 (1971).

"Our court has stated that where a person is convicted and sentenced on two counts based upon one act, that the trial judge should then set aside the lesser conviction. (citations omitted) In view of the fact that the sentences imposed herein are the same and are concurrent, it will not be necessary to remand for resentencing." State v. Mendoza, 107 Ariz. 51, 56, 481 P.2d 844, 849 (1971).

It is therefore ordered, with the issuance of the mandate herein, the conviction, judgment, and sentence for assault with a deadly weapon are reversed and set aside.

Affirmed in part, reversed in part.

HAYS, C. J., STRUCKMEYER and LOCKWOOD, JJ., and LEVI RAY HAIRE, Court of Appeals Judge, concur.

HOLOHAN, J., did not participate in the determination of this matter.