532 P.2d 506
**STATE of Arizona, Appellee,**

v.

**James Dial GREEN, Appellant.**

No. 2807.

Supreme Court of Arizona,
In Banc.

Feb. 19, 1975.

chest of the deceased, the police were called, and a homicide investigation begun.

The investigation developed evidence which convinced the police that the deceased had been murdered and the fire in the residence had been intentionally set. They also discovered that certain property belonging to the deceased, including her watch and old coins, had been stolen.

The case against the defendant was based entirely on circumstantial evidence. The deceased was well acquainted with the defendant. He had come to her home many times. The defendant and his father were the only persons outside of the deceased herself who could come upon the premises of the deceased without being attacked by her watchdogs.

The defendant was found to be in possession of personal items which had been taken from the deceased. The defendant at first claimed that one of the items had been his for some time. The item was a lady's wristwatch; later the defendant admitted it belonged to the deceased, and he had stolen it from her on the same day as the murder.

Old coins found on the defendant belonging to the deceased were explained as gifts, but in conversations with others he had claimed ownership of such items for a long time. Despite their true value, the defendant had been content to exchange one roll of silver dimes for the face value of five dollars.

The defendant was found to have human bloodstains on his shoes and clothing. Even the lady's wristwatch in his possession had a stain of dried blood. Although the defendant testified in the case, he was unable to explain the presence of bloodstains on his clothes or the watch.

The defendant challenges the sufficiency of the evidence to convict him. A review of the evidence supports the position of the state that there was substantial evidence to support the finding of the court. If there is substantial evidence in the case the conviction will not be disturbed. State v. Harvill, 106 Ariz. 386,

---

Gary K. Nelson, Atty. Gen. by Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

James Dial Green, in pro. per.

Sam Lazovich, Miami, for appellant.

HOLOHAN, Justice.

James Dial Green waived trial by jury and was tried by the court. He was convicted of murder and arson for which offenses he was sentenced to concurrent terms of life imprisonment and 15 to 20 years. A timely appeal was filed.

The record discloses that the body of the deceased Mattie M. Rhodes was discovered by fire fighters as they attempted to extinguish a fire at her home. When one of the firemen observed stab wounds on the

476 P.2d 841 (1970); State v. Thornton, 108 Ariz. 119, 493 P.2d 902 (1972). There is no distinction in the probative value of direct and circumstantial evidence. A conviction may be sustained on circumstantial evidence alone. State v. Chatman, 109 Ariz. 275, 508 P.2d 739 (1973), cert. denied, 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed. 2d 247.

Appellant next challenges the admissibility of the wristwatch and certain old coins belonging to the deceased but found in the defendant's possession.

Officer Arthur Kramer stopped the defendant about 12 hours after the murder, as the defendant was walking in Globe at 4:45 a.m. Kramer asked the defendant where he was going at that early hour of the morning. The defendant replied that he was on his way to catch a bus to Phoenix. The defendant asked Kramer for a ride to the depot and the officer consented.

On the way to the bus station the policeman noticed that the appellant was wearing a lady's wristwatch. When asked about it, the defendant said that he'd had the watch for some time. The policeman dropped the defendant at the bus station, but the matter of the lady's wristwatch worried him. Earlier that night the nephew of the murder victim had described a wristwatch which was missing from the wrist of the victim. The description of the watch given by the nephew was similar to the watch in the possession of the defendant.

Kramer called his department to determine whether the defendant had a watch when he was released from jail a couple of days previously. Kramer was advised that the defendant had not had a lady's wristwatch when he was released from jail.

Kramer also remembered that the victim's nephew had told him that the defendant and his father were the only two people who could get by the dogs kept outside by the victim.

Kramer returned to the bus station and asked Green to accompany him to the police department for questioning about the watch. At that time the defendant was no longer wearing the wristwatch. At the police station, Sergeant Kramer asked the defendant where the watch was. The defendant took it out of his pants pocket. Kramer then asked him about the victim's old coins. The defendant produced a number of them from his pocket.

The defendant contends that the wristwatch and coins were fruits of an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution. If the evidence was obtained with the consent of the defendant, or if it was obtained by a search pursuant to a lawful arrest, the evidence was admissible.

Although Sergeant Kramer testified that he wouldn't have restrained the defendant if he had not cooperated, the defendant testified that he felt he had no choice but to go with the officer. Whether a defendant has been arrested is to be tested by the evidence and not by the subjective beliefs of the parties. The United States Court of Appeals for the Ninth Circuit stated:

"Whether or not an arrest occurred is governed by the facts of the incident and not the subjective intent of the officer. [citations omitted] . . . A certain set of facts may constitute an arrest whether or not the officer intended to make an arrest and despite his disclaimer that an arrest occurred." Taylor v. Arizona, 471 F.2d 848, 851 (9th Cir. 1972).

An arrest is complete when the suspect's liberty of movement is interrupted and restricted by the police. State ex rel. Flournoy v. Wren, 108 Ariz. 356, 498 P.2d 444 (1972); State v. Edwards, 111 Ariz. 357, 529 P.2d 1174 (filed December 23, 1974).

If there was an arrest, the crucial question is whether there was probable cause to take the defendant into custody without a warrant. The lawfulness of an arrest without a warrant depends upon whether the evidence within the knowledge of the arresting officer would warrant a

man of reasonable caution to believe that a crime had been committed by the person arrested. State v. Edwards, *supra*; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

Officer Kramer had been present through much of the Rhodes murder investigation a few hours before seeing the defendant. The officer had been given the general description of the wristwatch missing from the body of the deceased. The watch worn by the defendant, besides being a woman's watch suspiciously worn by a man, fit the general description. Furthermore, the watch was not among the defendant's possessions when he was released from jail a couple of days prior to the murder. The defendant had said that he had had the watch for some time. The victim's nephew had also told Sergeant Kramer and others that the defendant and his father were the only two people who could get by the dogs which usually protected the deceased's home. The defendant was on his way out of town, an exigency requiring prompt action.

The cumulative effect of all the information which the officer had was more than mere suspicion even if it was less than what is necessary to establish guilt. State ex rel. Flournoy v. Wren, *supra*; *see* State v. Edwards, *supra*. We therefore conclude that there was probable cause to arrest the defendant, and any search incident to that arrest was lawful. Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); State v. Evans, 110 Ariz. 407, 519 P.2d 1148 (1974).

Just like the watch found on the defendant in State v. Evans, *supra,* the watch on the defendant's person could have been seized at any time following the arrest and it was irrelevant whether the defendant handed the watch to Kramer or Kramer physically searched for it.

"When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution."

Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1924)

The defendant's third objection on appeal relates to the admission into evidence of bloodstained pants taken from him at the time of his arrest. It is argued that the pants were so mutilated when being inspected at the Federal Bureau of Investigation laboratory that they could not be identified as being in substantially the same condition as when they were taken.

An examination of the pants discloses that tiny cloth samples had been cut from them. The testimony revealed that the holes were made by the FBI for purposes of examination. A similar examination was made of the defendant's T-shirt. Prior to the prosecutor's offer of the pants as evidence the pants were the subject of testimony first elicited by defense counsel. During cross-examination of the Globe Chief of Police, defense counsel asked if the trousers had been submitted to the FBI and if any blood was found. The police chief responded affirmatively that the FBI had reported the presence of human blood which could not be conclusively grouped. These conclusions were also borne out by the FBI Report that was admitted into evidence by stipulation of counsel.

In essence, the substance of what was sought to be proven by the pants had already been brought out by the defendant. A defendant cannot open the door to so-called inadmissible evidence and then assign its admission as error. State v. Smith, 110 Ariz. 112, 515 P.2d 857 (1973); State v. Fish, 109 Ariz. 219, 508 P.2d 49 (1973). Under such circumstances the pants were properly admitted in evidence.

Appellant's final argument is that his defense counsel acted incompetently. The principal instance which the defendant contends is proof of this position is the fact that the defense counsel did not argue for second degree murder even when invited to by the trial judge.

The record shows that the trial judge told the parties, after the case had been submitted to him, that the evidence of the

defendant's guilt was overwhelming. The trial judge did offer to hear argument on second degree murder. The defense counsel did not argue for second degree murder.

While the court did invite an argument distinguishing any elements of first and second degree murder in the case, there was little in the record that would support a claim of second degree murder and the absence of premeditation. In fact, the evidence clearly supports the conclusion that the state had proven deliberation and premeditation beyond a reasonable doubt. The judge's offer to hear an argument for second degree murder was a courtesy in light of the evidence compelling a first degree murder conviction.

A second consideration concerns the effect of the sentence to be served for a conviction for first degree murder. The judge had announced that the defendant, in effect, was not going to be acquitted. The record discloses that the judge and defense attorney agreed that there were possible advantages to the defendant under the practices of the parole board and the Arizona statutes if he were sentenced under the first degree murder statute, A.R.S. § 13–453(A), rather than the second degree murder statute, A.R.S. § 13–453(B). Under these practices and the current state of the law, the defendant could potentially be released on parole earlier on a mandatory first degree life sentence than if a substantial minimum sentence were imposed for a term of years on a second degree conviction.

The decision of counsel was a matter of trial strategy which reflected an understanding of the practical results of the peculiarities of Arizona sentence practices. Defense counsel's decision was based on sound experience, did not involve any inadequacy in his representation, and was made in the best interest of his client.

Judgment affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and LOCKWOOD and HAYS, JJ., concur.