NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ANGEL SAM HERNANDEZ, *Appellant.*

No. 1 CA-CR 13-0751

FILED 08-05-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2013-102961-001
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**        Defendant Angel Sam Hernandez (Hernandez) appeals his convictions and sentences for theft of means of transportation, unlawful flight from a law enforcement vehicle, possession of burglary tools, and criminal trespass. Hernandez's defense counsel has searched the record on appeal and asserts having found no arguable question of law that is not frivolous. Therefore, in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), defense counsel asks this Court to search the record for fundamental error. Hernandez was afforded the opportunity to file a supplemental brief *in propria persona*, but did not do so. After reviewing the record, we find no reversible error. Accordingly, we affirm Hernandez's convictions and sentences.

**BACKGROUND[1]**

**¶2**        On the night of January 14, 2013, J.G. drove his father's car, a Chevrolet Malibu, to work. After finishing his shift around midnight, J.G. encountered a man exiting the front seat of the Malibu. The man was wearing a surgical mask and a black hat. The man confronted J.G brandishing a knife and demanded he give him money. When J.G. informed the man he did not have any money, the man threatened to kill him. As J.G. backed away, the car keys fell from his hand. The man grabbed the keys and told J.G. to give him money for their return. J.G. again said he had no money. The man then got into the Malibu and attempted to run J.G. down as he sped out of the parking lot. Glendale Police officers were called to the scene, where J.G. was able to provide a vague description of the suspect. The police officers were unable to locate the stolen vehicle.

---

[1] "We view the evidence presented at trial in a light most favorable to sustaining the verdicts." *State v. Rutledge*, 205 Ariz. 7, 9 n.1, ¶ 2, 66 P.3d 50, 52 n.1 (2003).

¶3        On January 17, 2013, a Phoenix Police officer, on patrol in a fully marked vehicle, observed a car being driven somewhat unusually as the vehicle's headlights were flashing between its "bright" and "regular" lights for no apparent reason.  As the vehicle drove past the officer, he was able to view the driver of the vehicle and the vehicle's license plate.  The officer then conducted a records check of the vehicle, which indicated the brown Chevrolet Malibu had been stolen in the city of Glendale.  The officer began following the Malibu, which then began performing evasive maneuvers.  The officer eventually activated his siren and lights in pursuit of the Malibu, which responded by increasing its speed.

¶4        Shortly thereafter, the officer observed that the driver had abandoned the vehicle and was attempting to flee the scene on foot. The officer witnessed the driver scale a wrought iron fence that enclosed the parking lot of a Phoenix fire station.  Officers later apprehended the driver in the backyard of a residence near the fire station.  At the time of the apprehension, the officers also discovered an "automobile opening device"[2] (AOD) in the driver's sweatshirt.  In addition, officers collected other tools found on the street near the abandoned Malibu, and later discovered a tire iron inside the Malibu between the driver's seat and the center console.  Following his apprehension, the driver was identified as Hernandez.

¶5        Hernandez was charged with armed robbery, a class two dangerous felony (Count 1); aggravated assault, a class three dangerous felony (Counts 2 and 3); theft of means of transportation, a class three felony (Count 4); unlawful flight from a law enforcement vehicle, a class five felony (Count 5); possession of burglary tools, a class six felony (Count 6); and criminal trespass in the second degree, a class two misdemeanor (Count 7).  Prior to trial, the trial court granted the State's motion to dismiss Count 2 with prejudice.  Accordingly, Counts 3 through 7 were renumbered as Counts 2 through 6.

¶6        After a five day trial, the jury found Hernandez not guilty of Counts 1 and 2, but guilty of Counts 3 through 6.  The jury also found the State had proven two aggravating factors related to Count 3: 1) the offense was committed for pecuniary gain, and 2) the value of the property taken

_____

[2] A police officer testified at trial that the AOD is also referred to as a "slim jim."  To open a vehicle, the slim jim is "slipped in between the window and the door itself and [is] used to manipulate the mechanism of [the car door's] lock to bypass the actual locking cylinder."

was sufficient to be an aggravating circumstance. With that, the trial court sentenced Hernandez to three years' supervised probation for Counts 3 through 5; those terms to run concurrently. The trial court also sentenced Hernandez to a deferred jail sentence of 180 days on Counts 3 through 5 that was subject to deletion or further deferral upon Hernandez's compliance with the conditions of his probation. As to Count 6, Hernandez was sentenced to four months' incarceration in the county jail and was given credit for 252 days of pre-incarceration credit for Count 6. Because his presentence incarceration credit exhausted the length of his sentence on Count 6, the trial court released Hernandez from custody on that count.

¶7        Hernandez timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[3]

## DISCUSSION

¶8        After a diligent search of the entire record, Hernandez's counsel has advised this Court that she found no arguable question of law. We have fully reviewed for reversible error, and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. In addition, substantial evidence supports Hernandez's convictions. "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987). Substantial evidence is "such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)). Substantial evidence may include both direct and circumstantial evidence, which are intrinsically similar. *State v. Harvill*, 106 Ariz. 386, 391, 476 P.2d 841, 846 (1970). Moreover, circumstantial evidence alone may be sufficient to sustain a criminal conviction. *State v. Green*, 111 Ariz. 444, 446, 532 P.2d 506, 508 (1975).

---

[3] Absent material revisions after the relevant dates, statues cited refer to their current version unless otherwise indicated.

## I.     Theft of Means of Transportation

¶9        To convict Hernandez of theft of means of transportation, the State was required to prove that, without lawful authority, Hernandez knowingly controlled another person's vehicle while "knowing or having reason to know the [vehicle] is stolen." A.R.S. § 13-1814(A)(5). Substantial evidence supports Hernandez's conviction.

¶10       Eveidence demonstrated Hernandez was in possession of the Malibu without lawful authority at the time of his arrest.  Both J.G. and his father testified the vehicle was taken without permission, and, consistent with that testimony, the car was reported stolen to Glendale police.  On the night of Hernandez's arrest, a Phoenix police officer witnessed Hernandez driving the vehicle.  In addition, the DNA analyst for the State identified Hernandez as a major contributor of DNA taken from the steering wheel.

¶11       Moreover, evidence supports the conclusion that Hernandez knew or had reason to know the vehicle was stolen.  When the police officer began following Hernandez in the Malibu, he first attempted to evade the officer and ultimately decided to abandon the vehicle and flee on foot.  Given the circumstances, these actions support the reasonable inference that Hernandez knew the vehicle he was driving was stolen. *See State v. Weible*, 142 Ariz. 113, 116, 688 P.2d 1005, 1008 (1984) ("Flight or concealment after a crime is admissible because it bears on the issue of the defendant's consciousness of guilt. . . . Running, if otherwise unexplained, tends to communicate the individual's sense of guilt and his wish to escape immediate pursuit.").  Hernandez later told the police officer that was transporting him to jail that he fled from the vehicle because he believed there was a warrant out for his arrest, but later investigation revealed there were no outstanding warrants issued for Hernandez.  Further, Hernandez later told the same officer, "I'll do my time and come out.  I'll come out a [sic] better since I have no warrants," which negated his own previous explanation for running from the vehicle. Therefore, sufficient evidence existed for a reasonable jury to find Hernandez controlled the Malibu without legal authority and knew it was stolen. Accordingly, we affirm his conviction.

## II.    Unlawful Flight from Law Enforcement

¶12       A driver of a motor vehicle may be convicted of unlawful flight from a law enforcement vehicle if he "wilfully flees or attempts to elude a pursuing official law enforcement vehicle that is being operated in

the manner described in § 28-624, subsection C . . . . [and is] appropriately marked to show that it is an official law enforcement vehicle." A.R.S. § 28-622.01. A.R.S. § 28-624(C) requires the law enforcement vehicle, while in motion, to "sound[] an audible signal by bell, siren or exhaust whistle as reasonably necessary," and if the vehicle is so equipped, "to display[] a red or red and blue light or lens visible under normal atmospheric conditions . . . ." *Id.*

¶13 A Phoenix police officer testified he followed Hernandez in a fully marked law enforcement vehicle. When Hernandez drove onto a sidewalk, the officer activated the police vehicle's siren along with the vehicle's equipped red and blue lights. Hernandez failed to stop, and in fact, accelerated the speed of the vehicle. Hernandez then abandoned the vehicle and fled the scene. Based upon the record, there is sufficient evidence to support the jury's conviction of Hernandez for the crime of unlawful flight from a pursuing law enforcement vehicle.

## III.    Possession of Burglary Tools

¶14 In order to convict Hernandez on this count, the State was required to prove Hernandez possessed any "tool, instrument or other article adapted or commonly used for committing any form of burglary . . . and intend[ed] to use or permit the use of such an item in the commission of a burglary." A.R.S. § 13-1505(A)(1). "Whether or not an object is . . . a 'burglar's tool' under possession-of-burglary-tools statutes depends on the use to which the object is put." *State v. Smith,* 103 Ariz. 490, 492, 446 P.2d 4, 6 (1968).

¶15 At the scene of Hernandez's arrest, officers found an AOD inside his sweatshirt. A police officer testified the AOD is commonly used by civilians to "gain illegal access into vehicles." Moreover, Hernandez was seen driving, and fleeing from, a stolen vehicle while in possession of the AOD. In addition, the vehicle's owner testified the tires and rims had been removed from the vehicle, and officers found a tire iron in between the driver's seat and center console when Hernandez abandoned the vehicle. A police officer testified that tire irons are also commonly used in auto thefts. Although in this instance Hernandez had the keys to the stolen vehicle, given the surrounding circumstances, a reasonable jury could have concluded Hernandez possessed the AOD for the purpose of committing burglaries. *See State v. Quatsling*, 24 Ariz.App. 105, 108, 536 P.2d 226, 229 (1975) (discussing that the element of intent is a question of fact for the jury, and that intent may be inferred from the facts and circumstances in evidence). Therefore, our review of the record indicates

the State presented sufficient evidence to permit the jury to find Hernandez possessed a burglary tool with the intent to use it to commit a burglary.

## IV.    Criminal Trespass

**¶16**        "A person commits criminal trespass in the second degree by knowingly entering or remaining unlawfully in or on any nonresidential structure or in any fenced commercial yard." A.R.S. § 13-1503(A).  A fenced commercial yard is defined as "a unit of real property that is surrounded completely by fences, walls, buildings or similar barriers or any combination of fences, walls, buildings or similar barriers, and that is zoned for business operations or where livestock, produce or other commercial items are located."  When pursued by law enforcement, Hernandez abandoned the vehicle, scaled an eight foot high wrought iron fence, and gained entry into the fully enclosed parking area of a Phoenix fire station. A Phoenix fire fighter testified that the parking lot Hernandez entered was "fully enclosed" by the fence and was accessible after dark only from the fire station itself.  The fire fighter further testified that Hernandez did not have permission to be on the premises.  Therefore, the jury could reasonably find Hernandez guilty of criminal trespass in the second degree.

## CONCLUSION

**¶17**        After reviewing the entire record for reversible error, we find none.  *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure.  The record reveals Hernandez was present at all critical stages. There was sufficient evidence to support the jury's convictions, and the sentences imposed were within the statutory limits.

**¶18**        With the filing of this decision, defense counsel's obligations pertaining to Hernandez's representation in this appeal have ended. Defense counsel need do no more than inform Hernandez of the outcome of this appeal and his future options, unless upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984).

**¶19**        Hernandez has thirty days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review.  *See* Ariz. R. Crim. P. 31.19(a). Upon this Court's own motion, we also grant

Hernandez thirty days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
FILED: gsh