**348 P.2d 291**

**Estelle M. LAYNE, as Administratrix of the Estate of Alvey G. Layne, Deceased, Appellant,**

**v.**

**Don M. HARTUNG, Appellee.**

**No.· 6475.**

Supreme Court of Arizona.

Jan. 6, 1960.

Moore & Romley and Jarril F. Kaplan, Phoenix, for appellant.

Snell & Wilmer and James H. O'Connor, Phoenix, for appellee.

JOHNSON, Justice.

Plaintiff, as administratrix of the estate of Alvey G. Layne, deceased, brought this action to recover damages for the latter's death as a result of an automobile intersection collision. A jury trial resulted in a verdict in favor of Don M. Hartung, defendant. The verdict was evidently upon the theory that the collision was a proximate result of negligence of the decedent, Alvey G. Layne and that the defendant was not negligent. A motion for a new trial was denied and plaintiff appealed to this Court from the judgment and order denying the motion for a new trial.

At approximately 8:00 A.M. on May 14, 1955, Alvey G. Layne (referred to hereafter as decedent) was driving his 1955 Dodge sedan in a westerly direction on McDowell Road in Phoenix. Defendant was operating his 1953 Buick sedan north on Fifth Avenue at an admitted speed of about 30 to 35 miles per hour and when he was about 100 to 150 feet south of the intersection of Fifth Avenue and McDowell Road, he observed that the traffic light controlling north and southbound traffic on Fifth Avenue at this intersection was green. Defendant continued to operate his car at the same speed as he approached the intersection and he testified he thought it possible that he noticed a westbound vehicle on McDowell some 50 to 60 feet east of the intersection. An exhibit of the plaintiff demonstrated that when defendant was approximately 114 feet south of the intersection he could ob-

serve westbound traffic on McDowell Road at a distance of approximately 85 feet and the farther north he traveled, the farther east defendant could observe such traffic.

The defendant testified that as he approached the intersection he checked traffic to his left and then upon looking back to his right or the east, he observed the car of decedent at a position where it did not appear it would be able to stop. Defendant estimated the vehicle of decedent at that time to be about 20 to 30 feet from the intersection and his own position to be about 10 to 15 feet from the intersection. The defendant then applied his brakes, left 24 feet 10 inches of skid marks and, without swerving ran into the Layne vehicle, which resulted in the death of Alvey G. Layne.

The front end of defendant's automobile collided with the left rear of the Layne automobile at a point 25 feet north of defendant's entrance to the intersection and the point of impact occurred in the northeast quadrant of the intersection.

A witness to the collision, Ralph Pond, testified he was operating his vehicle north on Fifth Avenue, following behind the defendant and that both were driving approximately the same speed of 30 miles per hour and that the Buick operated by the defendant appeared to slow down as it neared the intersection and that the traffic light was green for northbound traffic on Fifth Avenue at the time defendant entered the intersection.

A witness testified he was following the decedent's car westbound on McDowell and that when it was approximately 100 feet from the intersection the light regulating traffic at the intersection turned red for westbound traffic and that the car operated by decedent entered the intersection against the red light and immediately thereafter it collided with the northbound car driven by defendant. A witness following the decedent's car on McDowell Road testified that he became startled because as the decedent approached the intersection he apparently made no attempt to stop and drove his car into the intersection against the red light. Another witness who was following immediately behind the car of the defendant testified that as the car of the defendant was entering the intersection with the green light, he also saw the car of the decedent enter the intersection, going west on McDowell Road and the "driver (decedent) seemed to be looking straight ahead and not know what was going on. I honestly believe he was unaware of what he was doing."

There was evidence introduced showing that the defendant could have stopped his vehicle in 72 feet when traveling at 30 miles per hour.

The plaintiff introduced evidence which created a conflict on the issue of which

driver was favored by the traffic signal at the time the two cars entered the intersection.

The plaintiff assigns as error the refusal of the trial court to give the following requested instruction:

"It is the duty of every motorist at all times to keep and maintain a proper lookout for other vehicles upon the highway. This duty applies to all *motorist*, even those *motorist* driving on a street approaching an intersection controlled by traffic lights.

"If you find by a preponderance of the evidence in this case that the defendant failed to observe this duty and that as a proximate result thereof Mr. Layne sustained injuries from which he died, it will be your duty to return a verdict in favor of the plaintiff."

■■■ This Court has consistently held that an operator of a motor vehicle must maintain such a lookout as a reasonably prudent person would maintain in the same or similar circumstances; Pearson & Dickerson Contractors v. Harrington, 60 Ariz. 354, 137 P.2d 381 and the mere fact that the driver may have the right of way does not relieve him of the duty to keep a lookout. In Henderson v. Breesman, 77 Ariz. 256, 269 P.2d 1059, 1063, we recognized this rule and said:

" * * * The mere fact that a driver approaching an intersection from the right might have the right of way does not relieve him of the duty to make such observation as a reasonably prudent person should make under those circumstances." See also Krauth v. Billar, 71 Ariz. 298, 226 P.2d 1012.

We also said in Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201, that the driver of a vehicle on a favored highway could rightly assume that the driver of an automobile approaching an intersection would stop before entering the highway and the driver on the favored highway could not be charged with negligence in acting upon the assumption, *unless* he continues on with knowledge that the other driver is not going to yield the right of way or is not acting within the law. We quoted with approval the language in Glatz v. Kroeger Bros. Co., 168 Wis. 635, 170 N.W. 934, 936:

"The possession of this right does not, of course, justify the possessor in plunging ahead regardless of consequences nor in failure to exercise ordinary care to avoid injury to others. * * *."

■■■ In the instant case the evidence disclosed that the two vehicles were approaching the intersection at approximately the same speeds. That from a point about 114 feet south of the intersection, the defendant could observe westbound traffic approximately 85 feet east of the intersection; and that when he was 40 to 60 feet from the

intersection he did in fact observe westbound traffic but did not pay any attention to that traffic. Defendant testified that it did not become obvious to him that the decedent was in a position of peril until defendant's car was 10 to 15 feet from the intersection and the car of decedent was 20 to 30 feet from the intersection.

Under these established facts the jury could have inferred that the defendant failed to maintain an adequate lookout and had the defendant maintained adequate lookout he could have observed earlier that the car operated by decedent was going to enter the intersection and further that the defendant then could and should have acted reasonably to avoid the collision. The jury under a proper instruction, could have inferred and found from the testimony and physical facts mentioned above, that the failure of the defendant to keep an adequate lookout contributed to and was a proximate cause of the accident. The court therefor erred in refusing to give the requested instruction.

■ Over plaintiff's objection and at the request of the defendant, the court gave the following instruction:

"You are instructed that unless you find by a preponderance of all the testimony that the defendant, Don M. Hartung, ran the red light at the time and place of the accident, then your

verdict must be for defendant, Don M. Hartung."

Plaintiff complains that this instruction informed the jury that the defendant was privileged to drive as he wished so long as he had the green light and that he was not required to exercise any of the care which the law demanded of him.

We agree with the contention of the plaintiff that the above instruction limited the jury's consideration to only the one issue and deprived the jury from considering other issues presented by the evidence.

As we have stated above it is the rule in this jurisdiction that the fact a driver may have the right of way does not relieve him from his negligence in failing to keep a proper lookout or in failing to yield the right of way when he discovers that another motorist is not acting within the law. Regardless of his favored status he must at all times use due care to avoid colliding with another, Nichols v. City of Phoenix, supra.

■ The unqualified statement contained in the above quoted instruction that unless the jury found that the defendant "ran the red light" they must return a verdict in his favor is not a correct statement of law. The effect of this instruction is that if defendant had the green light he had an absolute right to blindly proceed across the intersection irrespective of the movement of

other traffic. Such is not the law. The right to proceed at the direction of the green light is always conditioned upon the continued exercise of due care by the person obeying such direction, so that the rights of other motorists in the same intersection may be properly protected.

■ The question of which driver had the green light was only one of the issues to be decided in this case. We believe under the evidence the jury could reasonably have found that defendant failed to maintain a proper lookout or traveled at an unreasonable speed. We reiterate that it is the duty of a trial court to instruct the jury on all phases of the law applicable to the various fact situations developed during the course of the trial. Reah v. Jupin, 68 Ariz. 335, 206 P.2d 558; Tipton v. Burson, 73 Ariz. 144, 238 P.2d 1098; Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240. We conclude that this instruction was erroneous and precluded the jury from considering other issues raised by the evidence.

Plaintiff also complains that the facts entitled her to an instruction upon the doctrine of last clear chance and the trial court erred in refusing to give such a requested instruction.

■ In determining whether an instruction should be given we must consider the evidence in the strongest possible manner in support of the theory of the party requesting the instruction, Webb v. Hardin, 53 Ariz. 310, 89 P.2d 30, and in weighing the sufficiency of the evidence in this case to justify the giving of the requested instruction, the inferences which reasonably and logically flow from the evidence are to be considered and such inferences are a part of the evidence. Atchison, Topeka & Santa Fe R. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167.

■ The law is well established in this jurisdiction on the necessary elements which must be present in order to warrant the application of the last clear chance doctrine. Gray v. Woods, 84 Ariz. 87, 324 P.2d 220; Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071; Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240; Hirsh v. Manley, 81 Ariz. 94, 300 P.2d 588. There must be substantial evidence of the following elements before the doctrine is applicable (1) plaintiff as a result of his negligence, was in a position of danger from which he could not escape by the exercise of ordinary care; (2) that defendant knows of plaintiff's dangerous position, under such circumstances that he realizes or ought to realize, his inability to escape therefrom and (3) that he then has a clear chance to avoid injuring the plaintiff by the exercise of ordinary care and fails to do so. If all of these elements are present the rule applies and enables the plaintiff to recover, notwithstanding his own negligence. But if any of them be absent the rule does not apply, and the

case is governed by the ordinary rules of negligence and contributory negligence.

Applying this law to the present fact situation we do not believe that the record contains any substantial evidence that the defendant had the last *clear* chance to avoid the collision. The evidence of the defendant is undisputed that it did not become obvious to him that the decedent was in a position of danger until defendant's car was 10 to 15 feet from the intersection at which time the car of decedent was 20 to 30 feet from the intersection. It is clear that thereafter, considering the speed of each car, the defendant could not have, by the exercise of the highest degree of care, avoided the collision. Bryan v. Southern Pacific Company, 79 Ariz. 253, 286 P.2d 761, 50 A.L.R.2d 1. Under the circumstances of this case the defendant was not required, under the last clear chance doctrine, to anticipate that the decedent would run the stop signal, but on the contrary he had a right to assume that decedent would obey the law and stop, at least until the contrary became apparent. We conclude that the trial court properly refused the offered instruction on the doctrine of last clear chance.

Defendant offered in evidence an accident report prepared by a police officer pertaining to the accident in question and objection was made to the entire report on the grounds that it constituted hearsay evidence. The exhibit was then offered for the limited purpose of disclosing the alleged legal speed, which had been inserted in the report by the police officer making the investigation and over objection of the plaintiff the following was admitted and read to the jury:

> "Mr. Perry: With leave of the Court I will read only that portion which has been admitted by the Court which reveals that the vehicle driven by Captain Hartung, the legal speed for that vehicle was 35 miles per hour * * *."

Plaintiff thereafter moved the court to strike the above statement which was denied, and has assigned as error the admission of such portion of the report.

It is apparent from the record that defendant offered the exhibit in evidence under the Uniform Business Records Act, A.R.S. § 12–2262; however, this court in Welch v. Medlock, 79 Ariz. 247, 286 P.2d 756, held that such an accident report was not a "business record" within the meaning of the Act, and therefor inadmissible. This rule applies to the exhibit in the instant case.

The evidence is uncontradicted that the defendant was traveling in a business or residential district prior to and at the time of the accident, and that the City of Phoenix, by ordinance, which was admitted in evidence, had set the legal speed limit on North Fifth Avenue south of Mc-

96

Dowell at 30 miles per hour. While the evidence did not disclose whether signs were erected in the area giving notice of the authorized speed or that the increase had been approved by the Arizona Highway Commission as required by statute, we believe, in the absence of some evidence to the contrary it can be presumed that those things necessary to make the ordinance effective were performed. Consolidated Motors, Inc. v. Skousen, 56 Ariz. 481, 109 P.2d 41, 132 A.L.R. 1040.

We conclude that the trial court erred in admitting in evidence that portion of the accident report which stated that the legal speed for the defendant's vehicle was 35 miles per hour, for the reason that the same was purely hearsay, and an incorrect conclusion of the officer who prepared the report. Bean v. Gorby, 80 Ariz. 25, 292 P. 2d 199; State v. Martinez, 67 Ariz. 389, 198 P.2d 115; 31 C.J.S. Evidence § 194.

It was the duty of the court under the evidence in this matter to properly instruct the jury as to the applicable speed restrictions in effect on the street in question at the time of the accident as provided in the ordinance admitted in evidence.

The admission of the portion of the accident report which erroneously fixed the speed limit at 35 miles per hour, becomes prejudicial when we consider that the jury, under proper instruction, was at liberty to find that the defendant's speed beyond the legal limit was not reasonable or prudent under the circumstances, and was a proximate cause of the accident; however, the failure of the court to instruct the jury on the correct speed limit or at all, precluded any consideration of such issue.

We have considered the other assignments of error and find they are without merit.

Judgment reversed and new trial ordered.

STRUCKMEYER, C. J., and PHELPS, UDALL and BERNSTEIN, JJ., concur.