490 P.2d 571

STATE of Arizona, Appellee,

v.

Stanley Grey STEVENS, Appellant.

No. 2193.

Supreme Court of Arizona,
In Banc.

Nov. 9, 1971.

the act of robbery or burglary and was sentenced to serve life imprisonment. Defendant was represented at trial by the Public Defender and was properly advised by the trial court after the verdict of his rights to appeal and of appointment of counsel. Subsequently, defendant filed his notice of appeal in propria persona and along with it an affidavit of indigency requesting a copy of the transcript and minutes. The defendant was granted an extension of time to file briefs, was provided with the requested records and then given another 60 days from receipt of these to file briefs. Upon failure to do this, defendant was granted still another extension. The appeal was ordered submitted on the record on June 1, 1971, when defendant again failed to file his briefs within this time period.

The Supreme Court of the United States, in Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967), has laid down guidelines when such a procedure on appeal is used. It was held there that "the right to be furnished counsel does not depend on a request" and further that:

> " * * * it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel."

Thus, where a defendant has not requested counsel, his appeal cannot be heard without the aid of an attorney since this in and of itself does not constitute a waiver.

The facts in this case, however, certainly go beyond what the Supreme Court anticipated when it wrote *Swenson*. First, defendant was represented by the Public Defender at his trial; he was properly advised by the trial court of his rights and then expressed his intent to appeal in propria persona, requesting the record and the minutes to be sent to him personally so that he could formulate his appeal. No case goes so far as to say a defendant must have counsel if he elects to represent himself where he has been properly advised of

Gary K. Nelson, Atty. Gen., Phoenix, for appellee:

Stanley Grey Stevens, in pro. per.

UDALL, Justice:

Defendant was convicted in the Superior Court of Maricopa County of murder in the first degree of John Schultz while in

his rights. At the arraignment he opted for the appointment of the Public Defender. Similarly, given the same option on appeal defendant chose to represent himself by notifying the court of his intent to file in propria persona. He has and did exercise his right to appeal in his own behalf. Arizona Constitution, Art. 2, § 24, A.R.S., State v. Westbrook, 99 Ariz. 30, 406 P.2d 388 (1965); State v. Van Bogart, 85 Ariz. 63, 331 P.2d 597 (1958). And this right has been deemed of "equal stature" with the right of counsel. State v. Westbrook, supra.

We now turn to the merits of this appeal and to the record of defendant's trial. Defendant was charged with the murder of John Schultz while in the course of robbery or burglary (A.R.S. §§ 13-451, 13-452 and 13-453), with robbery while armed with a deadly weapon (A.R.S. § 13-641 and § 13-643) and with arson in the first degree (A.R.S. § 13-231). At the trial the information was amended omitting Count III of Arson and on March 16. 1970, the court granted defendant's directed verdict of not guilty to Count II, Robbery. Defendant was then tried by a jury and found guilty of murder in the first degree and the jury fixed the punishment at life. The defendant was thereupon sentenced by the court to serve a term of life imprisonment.

The facts determined at trial were as follows: In the late hours of October 20th, 1969, or the early hours of October 21st, decedent John Schultz was murdered by strangulation after an apparently violent struggle. His house was in great disorder when the police arrived, furniture was overturned, drawers opened and an empty wallet belonging to the victim was found on the floor of the bathroom. Defendant who knew decedent and had worked for him, was arrested in St. Louis, Missouri approximately five days after the crime. Defendant concededly left Phoenix the morning of October 21st. The defendant's motel room was properly searched on the afternoon of October 21. The officers

testified they found the room vacant and a search of the room itself revealed a pair of steel tin snips, which the State contended was used in the assault prior to the strangulation. A search of the trash cans in the alley in the back of the motel and approximately 75 feet from defendant's room uncovered a paper bag with a navy blue T-shirt, a pair of wash and wear cord type trousers and a pair of brown moccasins. All these items had what appeared, and later confirmed by police experts to be stains from human blood. Cross-examination revealed the police could neither determine the age nor blood type of these stains. Police fingerprint expert Monroe testified that he was able to lift an acceptable print from the bottom drawer of decedent's bedroom dresser. Monroe testified he matched it with defendant's fingerprints and found them to be identical. As with the bloodstains, the age of the fingerprint taken at the scene could not be determined. Monroe testified that if an area was relatively untouched, a print might last for months but he further stated his use of fingerprint powder was designed to lift only the most recent prints. The State concluded its case by introducing a line of witnesses who knew the defendant and identified the bloodstained clothes as his. One witness, Virginia Barnett, described the pants defendant wore as having a hole by the back pocket. The bloodstained pants exhibited at trial contained such a hole in the back of the trousers. Two witnesses, Diane Katschke and Betty Cates testified that defendant had threatened the decedent in their presence approximately one week before the crime, to the effect that "if John [Schultz] ever gave him a reason that he would carve his guts out." (R.T. 247, 255). Apparently the dispute had arisen over some property kept by the decedent which belonged to defendant's girl friend. John Bates testified he was present at a time when the defendant threatened to rob the decedent's home and there was further testimony that defendant needed money to go back east to return to his girl friend.

The only witness for the defense was defendant, Stanley Stevens. He denied making any threats and denied that the bloodstained clothes were his. He testified to his good relationship with the decedent, and that it was John Bates' idea and not his to rob the decedent. Defense sought to emphasize the differences between the six foot, 200 pound decedent and the five foot eleven inch, 170 pound defendant in terms of size and strength and the improbability that in such case, defendant could strangle him to death. He testified that he left town in order to be with his girl friend who was sent out of state the week before, that he had sufficient money of his own to do this and that he had lived with the decedent some weeks before and conceivably the presence of his fingerprint could have resulted from this stay. At the close of the case, defendant consented to try on the bloodstained clothes, and did so in the presence of the jury.

■ Taking the position of advocate for the defendant, we have painstakingly set forth in detail the statement of facts and have searched the record for error. Initially, we must decide if defendant's motion for directed verdict was properly decided by the court. The trial court granted defendant's motion for directed verdict as to Count II, Robbery, but denied it as to murder in the first degree. It is only with the latter that we must concern ourselves. Clearly, as the statement of facts elicited at trial indicates, the trial court acted properly in denying this motion. There is no duty on the part of the trial court to direct an acquittal where there is substantial evidence that the defendant committed the crime charged. State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966); State v. Silvas, 91 Ariz. 386, 372 P.2d 718 (1962). This Court, on review of the lower court's denial of defendant's motion for directed verdict, must view the facts most strongly in favor of upholding the verdict of the jury. State v. Acosta, supra; State v. Turner, 101 Ariz. 85, 416 P.2d 409 (1966). The facts in this case do not warrant a reversal of the court's denial of this motion.

During the course of the trial, numerous objections were made. In those instances where the objections were sustained in favor of the State or overruled against the defense we have examined the law and found the trial judge's rulings consistent with the rules of evidence. In any event, none of these dealt with controversies that were essential to the outcome of the case and would, in any event, constitute harmless error even if an erroneous decision had been made.

■ Turning our attention to the trial court's instructions, it is generally stated that they be viewed as a whole rather than looking at individual instructions or isolated paragraphs. State v. Sorrell, 85 Ariz. 173, 333 P.2d 1081 (1959); State v. Singleton, 66 Ariz. 49, 182 P.2d 920 (1947). Furthermore, the trial court has a duty to instruct the jury on all phases of the law applicable to the various fact situations developed during trial. Layne v. Hartung, 87 Ariz. 88, 348 P.2d 291 (1960) (overruled on other grounds); Odekirk v. Austin, 90 Ariz. 97, 366 P.2d 80 (1961). With these rules in mind we must determine whether the refusal by the trial court to instruct the jury as the defendant requested was error. Defendant's first requested instruction basically dealt with the establishment of deliberation and premeditation by the State in order to warrant a conviction and that they may be inferred from the circumstances surrounding the commission of the crime. The trial court rejected this since it was already covered in the court's prepared instructions. Since the instructions did, in fact, basically cover the same point, there was no error. Gibbons v. Williams, 93 Ariz. 116, 378 P.2d 926 (1963); Johnson v. Orcutt, 92 Ariz. 295, 376 P.2d 557 (1962). In the second requested instruction, defendant urged the court to instruct on manslaughter since the evidence does not preclude a homicide not in the perpetration of one of the five felonies listed in A.R.S. § 13–452, nor with premedi-

tation. As we have said the court has a duty to instruct as to a fact situation developed during the trial. We agree with the trial court that there was simply no evidence from the State or defense to indicate manslaughter had occurred. As to the third instruction, defendant requested that where the thought of robbery occurred after the victim was attacked then the killing was not in the perpetration of robbery. Again as with the second instruction there simply was no evidence presented to indicate this and the court was in no way obliged to instruct on it.

Finally, the defendant's motion for a new trial was properly denied since the verdict was not contrary to the law nor the weight of the evidence.

For the reasons herein stated the conviction is affirmed.

STRUCKMEYER, C. J., HAYS, V. C. J., LOCKWOOD, and CAMERON, JJ., concur.