523 P.2d 795

**STATE of Arizona, Appellee,**

v.

**Rafael TOSTADO, Appellant.**

**No. 2868.**

Supreme Court of Arizona, In Banc.

June 19, 1974.

Gary K. Nelson, Atty. Gen., R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

David M. Ochoa, Casa Grande, for appellant.

LOCKWOOD, Justice:

Rafael Tostado, the defendant in this case, was charged with two counts of murder in violation of A.R.S. §§ 13–451, 13–452, and 13–453. He was subsequently tried and convicted of two counts of second degree murder. He was sentenced to serve from eighteen to thirty years on each count with the sentences to run concurrently.

The pertinent facts are as follows. The defendant was a Mexican national who was illegally working in the United States as a ranchhand near Florence. While in Florence he met and began dating Jean Marshall, the daughter of his foreman. He eventually moved in with her and her four children from her previous marriages. Jean wished to terminate the affair and had her father inform the authorities that the defendant was in the country illegally. The defendant was taken into custody and deported to Mexico. He returned to the ranch three days later. He reached an agreement with Jean's father that he would be allowed to work on the ranch and would not be reported to the authorities provided he did not try to see Jean again.

Approximately one week later the defendant went into Coolidge to see Jean at the cafe where she worked. He waited for her to leave after the cafe closed for the night. He attempted to talk to her as she left but her new boyfriend, Frank Sanchez, interfered and unsuccessfully attempted to provoke an altercation with the defendant. Jean and Sanchez then left together in Jean's pickup truck.

A short while later the defendant went to Jean's apartment to see her but she was not there. The defendant proceeded to her father's house and when he could not find her there either, he returned to the apartment. This time he observed that her truck was parked in the front of her house. He then entered unannounced through the unlocked kitchen door. Upon entering he heard the voices of a man and a woman coming from the upstairs bedroom. The defendant then entered the kitchen and picked up a breadknife. He proceeded up the stairs and entered the bedroom. After switching on the bedroom light he observed Jean and Sanchez in bed together. The defendant then attacked and killed both of them with the knife.

Defendant left the scene of the crime and got a ride to Picacho where he jumped a train to Yuma. He was apprehended by the Yuma police and returned to Pinal County.

In his appeal the defendant urges that it was error for the trial court to allow rebuttal testimony in order to impeach the defendant's testimony that he never threatened Jean and that he was in love with her at the time of the killings. During the course of the trial the prosecutor asked the defendant if at any time prior to the killings, he had made any threatening acts toward the life of Jean Marshall. The defendant answered that he did not. The prosecutor then asked the defendant:

"Q Did you put your hands around her neck?

"A. No, sir.

"Q. Did you have a knife in your hand?

"A. No, sir.

"Q. Did you at any time while you were in that automobile have a knife?

"A. No, sir.

"Q. Did you see a knife that—did you see a knife in the automobile?

"A. No, sir."

After the defense rested, the prosecution presented two rebuttal witnesses. The first rebuttal witness was the father of the victim. He testified concerning an incident which took place in his car on the night of June 22, 1973. He further testified that the defendant who was sitting in the back seat placed his hands around Jean's throat and that she jumped forward and said that he had a knife.

The second rebuttal witness was a fourteen year old boy who was a passenger in the car. He testified that the defendant placed his hands around her neck and that she mentioned that he had a knife which the witness later saw lying on the floor of the car by the defendant's feet.

■ It is well established in this jurisdiction that evidence of other crimes which the defendant may have committed is prejudicial and usually inadmissible. State v. Jaramillo, 111 Ariz. 2, 522 P.2d 1079 (1974); State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967); State v. Garcia, 96 Ariz. 203, 393 P.2d 668 (1964). Such evidence is excluded in order to avoid the danger that the jury's attention would be drawn away from the real issues of the trial and fasten its attention on other false issues. State v. Hughes, supra. Such evidence may also lead the jury to conclude that the defendant is a "bad man" and convict him on that basis rather than on the basis of the evidence presented. State v. Deschamps, 105 Ariz. 530, 468 P.2d 383 (1970).

There are a number of well established exceptions to the general rule disallowing such evidence. Such evidence may be offered for the purpose of establishing motive, intent, absence of mistake or accident, identity, and a common scheme or plan.

Evidence of another crime is also admissible where the crimes are so related to each other that proof of one establishes the other. State v. Washington, 103 Ariz. 605, 447 P.2d 863 (1968); State v. Hughes, supra; State v. Phillips, 102 Ariz. 377, 430 P.2d 139 (1967); State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965).

In light of the foregoing legal principles, we find that the admission of the rebuttal testimony was not error. The evidence of the prior misconduct was not presented to prove the defendant's disposition to commit crime but was for the limited purpose of presenting the entire picture to the jury in order to show the intent to commit an assault with a knife. The facts indicate that the incident complained of occurred less than a month before the killings which resulted in the defendant's conviction. It concerned the use of a knife by the defendant on one of the victims. The evidence was provided by witnesses who were present in the car at the time the incident occurred and was presented in rebuttal to the defendant's testimony denying such acts. The testimony clearly had probative value by showing the true intent to commit an assault with a knife. Thus the evidence was properly admitted as one of the recognized exceptions to the general rule.

It is the defendant's second contention the court erred in allowing the prosecution to introduce rebuttal testimony to the effect that the defendant had asked the witness if he had a knife. The conversation with the defendant occurred just after the altercation involving the defendant and the victim as they were leaving the cafe and before the killings took place a short time later. In addition defendant complains that it was improper for the prosecutor to infer premeditation and deliberation from the comment of the defendant. We fail to see how either the rebuttal testimony or the prosecutor's inference constituted error. Either party is permitted to draw reasonable inferences from the testimony presented during the trial. Thus it was reasonable to infer that the defendant sought to procure a weapon prior to the murder of the victims.

Also the defendant failed to object either to the testimony in question or to the prosecutor's closing argument. Having failed to object on the trial level, the defendant is precluded from raising the issue on appeal. State v. Coward, 108 Ariz. 270, 496 P.2d 131 (1972).

Defendant's final contention is that the court erred in not granting his motion for a directed verdict at the close of the state's case as to first degree murder where the evidence had not been sufficient to indicate premeditation or deliberation. Deliberation and premeditation can be shown by evidence of a plan to murder which was formed after deliberation and reflection on the matter. These elements are susceptible of proof by circumstantial evidence if such evidence is sufficient to establish the elements beyond a reasonable doubt. State v. Brierly, 109 Ariz. 310, 509 P.2d 203 (1973). It is also well established that there is no duty on the part of the trial court to direct an acquittal where there is substantial evidence that the defendant committed the crime with which he is charged. State v. Morales, 110 Ariz. 512, 520 P.2d 1136 (1974); State v. Stevens, 107 Ariz. 565, 490 P.2d 571 (1971); State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966).

The record reveals that the victims died from multiple wounds caused by a bread knife taken from the victim's kitchen. The male victim was stabbed four times and the female victim between twenty and thirty times. There had been an altercation between the victims and the defendant just hours before the murders occurred. The defendant had inquired about a knife just after the altercation. The defendant had spent the night searching for Jean. Under these circumstances the trial court acted properly in denying the defendant's motion.

Judgment affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.