583 P.2d 256

The STATE of Arizona, Appellee,

v.

**Paul Montez SUSTAITA and Paul R. Gonzales, Appellants.**

Nos. 2 CA–CR 1040, 2 CA–CR 1052.

Court of Appeals of Arizona, Division 2.

Oct. 28, 1977.

Rehearing Denied Dec. 5, 1978.

Review Granted Jan. 10, 1978.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Cleon M. Duke, Asst. Attys. Gen., Phoenix, Philip G. Urry, Asst. Atty. Gen., Tucson, for appellee.

Harley D. Kurlander, Tucson, for appellant Sustaita.

Frederick S. Klein, Tucson, for appellant Gonzales.

## OPINION

RICHMOND, Judge.

In a joint indictment, Paul Montez Sustaita was charged with assault with intent to commit sodomy, A.R.S. § 13–252, and sodomy, A.R.S. § 13–651, as amended, and Paul Rodrigues Gonzales was charged with assault with intent to commit sodomy. The charges arose out of separate incidents occurring on the same date and involving the same victim in a trusty tank at the Pima County Jail. Following a jury trial, guilty verdicts were returned on all of the charges. Thereafter, Sustaita received concurrent prison sentences of eight to 10 years for assault with intent to commit sodomy and 12 to 15 years for sodomy. Gonzales was sentenced to a prison term of four to six years. Their appeals to this court were consolidated by stipulation.

The appeals involve several common questions, including the state's impeachment of its own witness, prosecutorial misconduct, destruction of photographs used in an out-of-court identification, and a defect in the indictment that the state was permitted to cure by amendment as the trial commenced. Sustaita also contends that assault with intent to commit sodomy is a lesser included offense of sodomy, and his conviction of both violates A.R.S. § 13–1641.

Because we reverse Gonzales's conviction but affirm as to Sustaita, we need not consider the former's contentions regarding denial of his motion to sever, or admission in evidence of Sustaita's statement to a jail paramedic.

Dennis James Lamprecht testified that while he was lying in his bunk in the trusty cell on the evening of July 27, 1976, Sustaita approached him, subdued him after a struggle, and committed sodomy. He further testified that later the same evening Gonzales forcibly attempted to commit sodomy with him but was unsuccessful. Lamprecht reported the incident the following day and at that time identified Sustaita and Gonzales from photographs of the 25 to 30 men confined in the trusty tank. By the time of trial the photographs of those who had been released had been destroyed in the normal procedure for handling jail records.

The state called as a witness Bobby Dean Warren, whose bunk on the night in question was directly above that of the victim. The following day Warren had told a detective investigating the incident that he had

been awakened by the victim's shouting and had seen Gonzales near the victim's bunk. In a written statement obtained by an investigator from the prosecutor's office shortly before trial, however, he denied hearing any struggle involving Lamprecht on the night of the alleged assault. At trial he testified in accordance with the latter statement, and the state undertook to impeach him with the earlier one. In the face of the prosecutor's claim of surprise, counsel for Gonzales established on cross-examination:

"Q. About the 22nd of—of November did you talk with an investigator from the Pima County Attorney's Office?

"A. Yes.

"Q. And did you tell that investigator the same thing that you've told the jury here?

"A. Yes."

Further, on redirect examination, the witness testified:

"A. This is the same thing I told that guy when we talked to him at the Jail.

"Q. That—but it's not the same thing you told Ron Hyatt after you talked to him after it happened, is it?"

Detective Hyatt, who had testified earlier, then was recalled to the stand and permitted, over objection, to relate the first statement:

"Q. All right. Sir, if you would—and I'd ask you to do this from recollection as best you can rather than from the report, if you would, would you please relate to this jury what Bobby Warren told you on July 28th, 1976, that he had observed or recalled about the evening of July 27th and Dennis Lamprack [sic]?

"MR. KLEIN [Counsel for Gonzales]: Your Honor, I'd object. It's hearsay.

"THE COURT: *State v. Skinner* permitts [sic] this.

"You may proceed."

It seems clear from the unrefuted testimony regarding the second statement that the state's claim on appeal of surprise justifying impeachment of its own witness is unfounded, but any possible doubt in that regard is dispelled by the prosecutor's closing argument:

"Both attorneys have referred to Mr. Warren as my witness. And I shuddered when they did it, believe me. You know, it used to be you would vouch for any witness that you'd call, for his credibility. I don't vouch for his credibility any further than I can throw him. There's no question about that. That man is the one who was in the tank with—with Zufelt, with Sustaita, with Gonzales. They're all in this together. But I did have to call him for one thing, and that was—I could ask him if he told Detective Hyatt what Detective Hyatt's report contained. And then, if he denied it, I am permitted to cross-examine him on that, and say, 'Well, didn't you say this before, whenever we asked you about it?' And you're permitted to consider that as actual evidence. Not just—you know—a contradiction, but you can actually consider that as evidence in support of the State in this particular matter. That's why I called him. I had no allusions [sic], believe me, when he was called to the witness stand, that he was going to do any great favors for me, or nail neither one of these individuals. I knew he wasn't. But what he did say, he denied that he had told Detective Hyatt that he was asleep and he heard shouting, and he woke up to find Dennis Lamprecht shouting. And, of course, it was at that point, after he testified to that, that I had Detective Hyatt come in, and he testified, 'Well, yeah, after this incident occurred I talked to Bobby Warren, and that's what he said; he heard shouting.'"

■ *State v. Skinner*, 110 Ariz. 135, 515 P.2d 880 (1973), relied on by the trial court, does not authorize impeachment by the prosecution of its own witness in the absence of surprise. To the contrary, at the time of trial, the rule was that a party may impeach its own witness if the latter's statements: 1) surprise the examiner, 2) are material, and 3) damage the examiner's case. *State v. Ulin*, 113 Ariz. 141, 144, 548 P.2d 19, 22 (1976).

While improper admission of Warren's prior statement[1] requires reversal as to Gonzales, it has no effect on Sustaita's conviction. The statement incriminated only Gonzales and Sustaita's counsel made no objection at trial to its admission, nor was there any reason for him to do so.

Any prosecutorial misconduct in cross-examination of Sustaita was not sufficiently prejudicial to require the granting of a new trial. *See State v. Noles*, 113 Ariz. 78, 546 P.2d 814 (1976). The trial court admonished the prosecutor for characterizing one of Sustaita's prior felony convictions as "aggravated assault on a woman," but denied a defense motion for mistrial. A similar motion based on repeated references in closing argument to felony convictions of the defense witnesses also was denied. The remarks were fair comment on the credibility of the witnesses. We find no abuse of the trial court's discretion in either instance. *See State v. Gonzales*, 105 Ariz. 434, 466 P.2d 388 (1970).

In the absence of bad faith or connivance on the part of the government, the destruction of evidence prior to trial does not necessitate reversal of a conviction. *State v. Brewer*, 26 Ariz.App. 408, 549 P.2d 188 (1976). There is nothing in the record to suggest that the missing photographs had been destroyed deliberately in order to withhold them from appellants, or that they were material for some purpose other than the trial judge's determination of whether the pre-trial identification procedure was unduly suggestive. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969). Even assuming the unavailability of the photographs somehow invalidated the trial judge's conclusion that the circumstances of the pre-trial identification were not unduly suggestive, the *Dessureault* hearing established an adequate basis for the in-court identification of appellants. *State v. Bainch*, 109 Ariz. 77, 505 P.2d 248 (1973). Lamprecht testified that he would have been able to identify appellants without ever having seen the photographs nearly four months earlier, and did so without apparent difficulty from an in-court lineup arranged by defense counsel. An in-court identification is not tainted if it has an independent source. *State v. Dessureault*, supra.

The defect in the indictment was identical in the counts charging each appellant with assault with intent to commit sodomy, mistakenly designating the crime as a violation of A.R.S. § 13–253 rather than § 13–252:[2]

"COUNT ONE (ASSAULT WITH INTENT TO COMMIT SODOMY)

"On or about the 27th day of July, 1976, PAUL MONTEZ SUSTAITA assaulted Dennis Lamprecht with intent to commit the infamous crime against nature all in violation of A.R.S. § 13–253.

\* \* \* \* \* \*

"COUNT THREE (ASSAULT WITH INTENT TO COMMIT SODOMY)

"On or about the 27th day of July, 1976, PAUL RODRIGUES GONZALES assaulted Dennis Lamprecht with intent to commit the infamous crime against nature all in violation of A.R.S. § 13–253."

After the jury had been impaneled on the first day of trial, defense counsel moved to

---

1. Ironically, the statement may properly be admitted to impeach Warren on retrial, the limitations on impeachment of a party's own witness having been abolished by the Rules of Evidence for Courts in the State of Arizona promulgated by the Supreme Court effective September 1, 1977.

2. § 13–252. Assault with certain intents; punishment

    A person who assaults another with intent to commit rape, the infamous crime against nature, mayhem, robbery or grand theft, shall be punished by imprisonment in the state prison for not less than one nor more than fourteen years.

§ 13–253. Assault with intent to commit a felony; punishment when not otherwise prescribed

    A person who assaults another with intent to commit a felony, the punishment for which is not otherwise prescribed, shall be punished by imprisonment in the state prison for not to exceed five years, or by imprisonment in a county jail for not to exceed six months, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment.

**604**

dismiss the respective counts. The motions were denied, and the trial court permitted the state to amend the indictment by substituting the proper statutory citation. It can hardly be argued that appellants lacked notice of the nature of the charge, and they made no such claim in the trial court. We believe their motions to dismiss were properly denied, and the motion to amend providently granted under 17 A.R.S. Rules of Criminal Procedure, Rule 13.5(b). *See State v. Harrison*, 111 Ariz. 508, 533 P.2d 1143 (1975). Further, the defect was not raised in accordance with Rule 16, as required by Rule 13.5(c).

▮▮▮ Finally, we reject Sustaita's argument that assault with intent to commit sodomy is a lesser included offense of sodomy. The test is whether the greater offense cannot be committed without necessarily committing the lesser. *State v. Woody*, 108 Ariz. 284, 496 P.2d 584 (1972). Sodomy can be committed with the victim's consent, *State v. Bateman*, 113 Ariz. 107, 547 P.2d 6 (1976), cert. den., 429 U.S. 1302, 97 S.Ct. 1, 50 L.Ed.2d 32 (1976), and therefore without an assault. The preliminary attack on Lamprecht with the requisite intent clearly supported Sustaita's conviction of a separate crime.

The judgment of guilt against Paul Montez Sustaita on both charges and the sentences thereon are affirmed. The judgment of guilt against Paul Rodrigues Gonzales is reversed and the case is remanded for a new trial as to him.

HOWARD, C. J., and HATHAWAY, J., concur.