593 P.2d 912

**STATE of Arizona, Appellee,**

v.

**Antonio BUSTAMONTE, Appellant.**

**No. 1 CA–CR 2885.**

Court of Appeals of Arizona,
Division 1,
Department C.

June 8, 1978.

Rehearing Denied Aug. 7, 1978.

Review Granted Sept. 14, 1978.

Bruce E. Babbitt, former Atty. Gen., John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Terry J. Adams, Deputy Public Defender, Finn, Finn & Finn, P. C., by Ruth G. Finn, Herbert B. Finn, Phoenix, for appellant.

## OPINION

WREN, Judge.

Following a jury trial, appellant, Antonio Bustamonte, was convicted of assault with a deadly weapon and was sentenced to serve a prison term of not less than five nor more than nine years in the Arizona State Prison. He has appealed, asserting that (1) the State improperly introduced evidence of an unrelated crime; (2) he was improperly sentenced under the enhanced punishment provisions of A.R.S. § 13–249(B); and (3) the court improperly instructed the jury on the law of assault with a deadly weapon.

To respond to these issues we set forth the following facts: Officer Charles Ruiz was making narcotics purchases in an undercover capacity, and to that end he, the appellant, and a third party, Armando Vega, drove to Yuma to negotiate a purchase of heroin. The narcotics transaction failed to materialize and all three returned to Phoenix the same day, arriving at the Clover Motel around 9:15 p. m. Appellant, who was sitting behind Officer Ruiz in their parked vehicle suddenly placed his left arm around the officer's chest to hold him down, and then held a pair of scissors to the right side of the officer's neck. At the same time a third person, Hun Harris, who had come from the motel, leaned into the car and reached for Ruiz. The officer then grabbed the scissors with his left hand; withdraw his service revolver with his other hand and pointed the gun over his shoulder at appellant. He told him that if he did not release him he was going to shoot. Appellant released the officer and withdrew the scissors. Both Harris and appellant were then arrested by the officer.

Appellant's first argument on appeal is that the State improperly introduced evidence of an unrelated crime, that is, the attempted purchase of heroin in Yuma. *See State v. Tostado,* 111 Ariz. 98, 523 P.2d 795 (1974). The record reflects, however, that appellant did not object to the introduction of this evidence, nor did he ask for a mistrial or even request that the evidence be stricken. Further, on cross-examination, appellant questioned Officer Ruiz regarding the Yuma heroin transaction and appellant's specific role in it. Under these circumstances, appellant waived the right to raise this issue on appeal. *State v. Sowards,* 99 Ariz. 22, 406 P.2d 202 (1965); *Allen v. State,* 26 Ariz. 317, 225 P.2d 332 (1924).

Appellant next claims (1) the information was insufficient to put him on notice that he would be required to defend a charge under the enhancement provisions of A.R.S. § 13–249(B), and (2) that he was improperly sentenced under A.R.S. § 13–249(B).[1]

---

1. Appellee argues that appellant may have been sentenced under the provisions of subsection (A) rather than subsection (B). The sentencing procedure was somewhat confused because the court, in imposing judgment, recited that appellant had been convicted of Assault with a Deadly Weapon, A.R.S. § 13–249(A) and (B) without specifying which subsection applied. However, at the end of trial, the court denied a motion for directed verdict specifically

As to the first contention, the information charged:

"THE MARICOPA COUNTY ATTORNEY accuses Antonio Canez Bustamonte this 29th day of March, 1977, charging that in Maricopa County, Arizona:

Antonio Canez Bustamonte a/k/a Tony on or about the 16th day of February, 1977, assaulted Charles D. Ruiz with a deadly weapon, to wit: scissors, all in violation of A.R.S. § 13–249(A) and (B)."

Appellant argues, citing *State v. Garcia,* 114 Ariz. 317, 560 P.2d 1224 (1977) and *State v. Castaneda,* 111 Ariz. 264, 528 P.2d 608 (1974), that the conjunctive allegation of Assault with a Deadly Weapon under both A.R.S. §§ 13–249(A) and 13–249(B) failed to put him on proper notice he should be prepared to defend under subsection (B). His reliance on the *Garcia* and *Castaneda* cases is unwarranted since the informations in those cases referred to "A.R.S. § 13–249" while the information here expressly referred to A.R.S. § 13–249(B). With respect to the information quoted above, we note that at no time did appellant file a motion under either Rule 13.5 or Rule 16.1, 17 A.R.S., Rules of Criminal Procedure, contending that the information was defective. He has, therefore, waived any possible error with regard to lack of notice. *State v. Sustaita,* 119 Ariz. 600, 583 P.2d 256 (1977).

Appellant's second attack on sentencing under subsection (B), however, is meritorious. A discussion of the argument here requires setting forth the provisions of the statute.

"Section 13–249. Assault with deadly weapon or force; punishment.

A. A person who commits an assault upon the person of another *with a deadly weapon or instrument,* or by any means or force likely to produce great bodily injury, shall be punished by imprisonment in the state prison for not less than one nor more than ten years, by a fine not exceeding five thousand dollars, or both.

B. A crime as prescribed by the terms of subsection A, committed by a person armed *with a gun or other deadly weapon,* is punishable by imprisonment in the state prison, for the first offense, for not less than five years, for a second offense, not less than ten years, for a third or subsequent offense, not less than twenty years nor more than life imprisonment, and in no case, except for first offense committed by a person armed with a deadly weapon other than a gun, shall the person convicted be eligible for suspension or commutation of sentence, probation, pardon or parole until such person has served the minimum sentence imposed." (Emphasis added.)

Appellant's position is that the scissors he used in his assault of Officer Ruiz did not constitute an "other deadly weapon" within the meaning of A.R.S. § 13–249(B) but rather was a "deadly weapon or instrument" within the meaning of A.R.S. § 13–249(A).

■ The fact that an assault with a *deadly weapon* is proscribed by both subsections of § 13–249 created an ambiguity that was resolved by the Supreme Court in *State v. Church,* 109 Ariz. 39, 504 P.2d 940 (1973).

"By adding the words 'or deadly weapon' after 'armed with a gun' in subsection B, we believe the rule of '*ejusdem generis*' has application here. [Citations omitted.] The words '*ejusdem generis*' literally translated means [sic] of the same kind, class or nature. Such rules apply only to persons or things of the same nature, kind or class as preceding specific enumerations. [Citations omitted.] In applying these principles in construing A.R.S. § 13–249, subsec. B, as amended, we are of the opinion that the legislature intended that one armed with a deadly weapon of the type like a gun (ones that are *inherently dangerous* ), is subject to increased punishment." 109 Ariz. at 42–43, 504 P.2d at 943–944. (Emphasis added.)

directed to A.R.S. § 13–249(B). The court also denied a motion to dismiss as to A.R.S. § 13–249(B) at the time of sentencing. On the basis of the record we can only assume that appellant was sentenced under the enhancement provisions of subsection (B).

"Inherently dangerous means that danger inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury . . .." *Thompson v. Paseo Manor South, Inc.,* 331 S.W.2d 1, 6 (Mo. App.1959). When used with reference to a deadly weapon, the term means that the nature of the weapon itself, if unskillfully or carelessly used, involves a grave risk of serious bodily harm or death. In the present case the scissors used in the attack on Officer Ruiz were an ordinary, lightweight, stainless steel household scissors; clearly not an "inherently dangerous" and deadly weapon in the same class and sense as a gun, for which the legislature intended to provide the increased punishment required by subsection (B). In this regard the trial court erred in imposing sentence under this subsection.

Appellant's final contention is that the court incorrectly instructed the jury on the law of assault with a deadly weapon. The court instructed:

"Assault with a Deadly Weapon has two elements:

(1) There must be an attempt to injure another person physically by the use of a deadly weapon; and

(2) The defendant must be able to cause physical injury.

A deadly weapon is any instrument used in a way likely to cause death or serious physical injury. The defendant does not have to touch the victim in order to commit an assault.

Attempt to injure another person physically does not mean that the defendant has to intend that some bodily harm result. Defendant need only intend the acts which he performs. Thus, the pointing of a deadly weapon in a threatening

manner within striking distance and with the ability to injure constitutes Assault with a Deadly Weapon."[2]

Appellant objected to the court's instruction on the ground that it misstated the law, in that it inferred that an intent to do harm was not an element of assault with a deadly weapon. The same argument is repeated here on appeal. The State, on the other hand, cites to the following cases as authority for the instruction: *State v. Gary,* 112 Ariz. 470, 543 P.2d 782 (1975), cert. den., 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 767; and *State v. Seebold,* 111 Ariz. 423, 531 P.2d 1130 (1975); *State v. Dillon,* 26 Ariz.App. 220, 547 P.2d 491 (1976).

In *State v. Seebold* the defendant requested that the court instruct the jury as follows:

"Thus, in the crime of ASSAULT WITH A DEADLY WEAPON, a necessary fact to be proved is the existence in the mind of the Defendant of the *specific intent to do harm,* . . ." (Emphasis added.) 111 Ariz. at 426, 531 P.2d at 1133.

In rejecting the instruction our Supreme Court, quoting from *United States v. Harvey,* 428 F.2d 782, 783–784 (9th Cir. 1970), held that the "purposive intent requirement" does not apply when "traditional and obvious deadly weapons" are involved and that there is therefore "no duty on the part of the trial judge to give an 'actual intent to harm' instruction." *State v. Seebold,* 111 Ariz. at 426, 531 P.2d at 1133. The court went on to say: "Once it is shown that the person assaulted the victim with a gun there is no further need to show that he intended to do harm with that gun." 111 Ariz. at 426, 531 P.2d at 1133.

Under A.R.S. § 13–241(A) simple assault is defined as

2. The prosecutor in accord with the instruction told the jury that appellant did not have to intend bodily harm:

"The Court will further be instructing you along the lines that I was just discussing. Attempt to injure another person physically. Those words in the instruction does [sic] not mean that the defendant has to intend that bodily harm result. It doesn't mean that he has to intend to shove them through the

officer's neck. Defendant need only intend the act which he performs; holding those scissors at the officer's neck. That is assault with a deadly weapon. Thus, the pointing of a deadly weapon in a threatening manner within striking distance and with ability to injure constitutes Assault with a Deadly Weapon. In other words, at the moment the defendant puts these scissors up here, the assault with a deadly weapon is complete."

"[A]n unlawful attempt, coupled with a present ability, to commit a physical injury on the person of another."

It is urged by appellant that despite the language of this statute the jury was told just the opposite, in that it was instructed that an attempt to physically injure another "does not mean that the defendant has to intend that some bodily harm result." Appellant is also apparently arguing that a pair of household scissors is not a "traditionally deadly weapon" which would permit imputing to him the general intent to do the "great bodily harm" which the statute requires, or to negate the requirement of a specific intent. The instruction given, he asserts, was in essence an instructed verdict in that it told the jury that the crime had been committed regardless of defendant's intent to inflict any physical harm. Appellant apparently concedes that the instruction would have been appropriate had a gun been used, but that it was misleading as to any type of weapon not in the inherently deadly class.

■ We do not agree with appellant's reasoning. As stated in *State v. Dillon:* "Cases . . . have held that intent to do physical harm is not an element of assault with a deadly weapon when a firearm is used. *State v. Seebold,* 111 Ariz. 423, 531 P.2d 1130 (1975); *State v. Gary,* 112 Ariz. 470, 543 P.2d 782 (1975). *The criminal intent required in the crime of assault with a deadly weapon is the general intent to willfully commit an act the direct, natural and probable consequences of which, if successfully completed, would constitute a battery.*" 26 Ariz. App. at 222, 547 P.2d at 493 (Emphasis added.)

Moreover, as noted in *State v. Gary,* "It logically follows that if an intent to do physical harm is not an element of assault with a deadly weapon when a firearm is

used that an attempt to do physical harm is not an element of the crime either." 112 Ariz. at 472, 543 P.2d at 784.

Admittedly the "no intent" cases have involved "guns". However, we reject the contention that the instruction is proper only when a gun or other inherently or traditionally deadly weapon is used. It is not logical or sensible to draw a distinction between a loaded firearm and a pair of closed scissors poised against the neck of the victim in a threatening manner. Under many circumstances the latter could far more readily be used as an instrument of death than the former. It would be absurd to assert that a specific intent to do bodily harm is not required if a gun had been pointed at the officer but is required when the cutting end of a scissors is placed next to his throat. We hold that scissors used in the manner they were here constitutes a deadly weapon as a matter of law.[3]

■ It is not necessary that the object used be inherently dangerous or deadly. An instrumentality is a "deadly weapon" if it is capable of being used to inflict death or great bodily injury. A beer bottle when used as a club or missile constitutes a "deadly weapon" for the purpose of establishing assault with a deadly weapon. *People v. Cordero,* 92 Cal.App.2d 196, 206 P.2d 665 (Cal.App.1949). A fingernail file, by the manner of its use, was held to be a deadly weapon in *People v. Russell,* 59 Cal. App.2d 660, 139 P.2d 661 (1943). In *Barnes v. State,* 172 Tex.Cr.R. 303, 356 S.W.2d 679 (Tex.Cr.App.1961) the Texas Court of Criminal Appeals held that a pocket knife, while not per se a "deadly weapon", could become such if used in a deadly manner. Such cases establish that the term "deadly weapon" is not restricted to weapons or instruments made and designed for offensive or defensive purposes, or for the destruction of life or the infliction of injury, but embraces

---

**3.** We note that in the recent opinion of *State v. Moss,* 119 Ariz. 4, 579 P.2d 42 (1978), our Supreme Court held that it was proper to submit to the jury the question of whether a tire iron, used to beat the victim about the head, was a "deadly weapon" for purposes of the enhanced punishment provisions of A.R.S.

§ 13–245(C). This holding is inapplicable to this issue which involves the question of whether it was necessary, under A.R.S. § 13–241(A), to prove the defendant had a specific intent to harm Officer Ruiz when he held the scissors to the side of the officer's throat.

any instrument with which a person may be wounded by cutting or stabbing. The fact that the victim is not actually wounded is immaterial to the classification.

It is true that the court's instruction here seems to fly in the face of the language of the simple assault statute (A.R.S. § 13–241(A)), but the instructional interpretation has been given time honored support from a plethora of cases. The rationalization is perhaps best expressed in *State v. Dillon:*

"The 'physical injury' in the foregoing statute is not synonymous with 'bodily harm' but includes any wrongful act committed by means of physical force against the person of another. The term 'physical injury' as used here is synonymous with 'physical force' and in relation to assaults the two terms are used interchangeably." 26 Ariz.App. at 222, 547 P.2d at 493.

The judgment of conviction is affirmed; however, the case is remanded for resentencing under A.R.S. § 13–249(A).

DONOFRIO, P. J., and SCHROEDER, J., concur.