788 P.2d 1314

**Wilford PACHECO, Plaintiff–Appellant,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Defendant–Respondent.**

**No. 16993.**

Supreme Court of Idaho.

Oct. 18, 1989.

ORDER DENYING PETITION
FOR REHEARING

The Appellant having filed a PETITION FOR REHEARING on August 4, 1989, and supporting BRIEF on August 21, 1989, of the Court's Opinion entered July 21, 1989, 116 Idaho 794, 780 P.2d 116; therefore, after due consideration,

IT IS HEREBY ORDERED that Appellant's PETITION FOR REHEARING be, and hereby is, DENIED and the dissent on Denial of the Petition for Rehearing by BISTLINE, J., be, and hereby is, RELEASED.

BISTLINE, Justice, dissenting On Denial of Appellant's Petition for Rehearing.

In his brief submitted in support of the request that the Court grant a rehearing in order to reconsider that which the Court has done to the state of the law in general, and to Dr. Pacheco and his wife in particular, counsel for appellant has aptly stated that:

What the majority opinion fails to address is that it was not the fact of the reception of evidence from Olmsted as to *what* was the cause of the fire which gives rise to the Appellant's anguish in the rulings of the trial court; rather, it was his opinion as to *who* the perpetrators were.

. . . .

Clearly, it is one thing to receive evidence as to the cause of the fire; *it is quite a different thing to receive evidence from a so-called expert* (clothed with all of the dignity of the State of Idaho) *as to who the 'prime suspects' as perpetrators of the fire were.*"

(Emphasis added.) This is followed by an attempt to enlighten the Court with the objective of teaching that the issue here was the erroneous *reception* of evidence—whereas the majority opinion, in seeking to bolster its conclusion that prejudice was not shown, has relied upon cases where evidence was *rejected*. It seems to at least this one member of the Court that, where evidence is rejected, the difficulty of establishing prejudice as to something which the jury was not allowed to hear is obvious. In essence it requires the proving of a negative. Moreover, it does not hang in the wind, but is supported by competent authority which is readily observable in the Pacheco supporting brief:

It is probable that the statements of the highway patrolman, by virtue of his position, were given great weight and credence by lay jurors and without question were a prominent factor in the jury's determining the verdict. In the case of *Lee Moor Contracting Co., v. Blanton*, 49 Ariz. 130 at page 145, 65 P.2d 35 at page 41, we stated:

If we could convince ourselves that this error was without prejudice to the rights of the defendant, we would notwithstanding refuse to reverse the case. No doubt Canfield occupied a rather prominent place in the minds of the jurors, he being the representative of the state to see that the work of construction was carried on properly. We cannot say just how much or how little credence was given to his judgment or conclusion, and for that reason we feel the case should be retried. *Bogard GMC Co. v. Henley* [92 Ariz. 107] 374 P.2d 660, 663 (Ariz.1962); *Layne v. Hartung* [87 Ariz. 88] 348 P.2d 291 (Ariz.1960); and *Blackburn v. [Tombling*, 148 Colo. 161] 365 P.2d 243 (Colo.1961).

Another strongly convincing point in the brief supporting the Pacheco petition for rehearing is the assessment of the trial court's direction to the jury to disregard Olmstead's conclusion that *Mrs.* Pacheco was also a "prime suspect" in the setting of the fire. As the brief well states, "[t]his, of course, only served to suggest to the jury that *Olmsted was justified in his opinion as to Dr. Pacheco.*" Brief in support of petition at 6.

The appellant's point concerning the majority's instant rehabilitation of otherwise inadmissible evidence when the claim is one of bad faith is also well-taken. The Rules of Evidence are applicable to bad faith claims as much as to claims of any other sort. As appellant notes, the fact that the respondent was also defending a bad faith claim should not in and of itself serve to rescue inadmissible evidence from the operation of the rules.

In sum, for these reasons as well as those stated in my dissenting opinion questioning the majority decision in this case, I cannot but believe that the petition for rehearing should have been granted, and under ordinary circumstances would have been. If one were to poll one thousand practicing trial attorneys, even some of limited experience, it is much doubted that even twenty in number could be found who would *not* concede that the ball game was

over when the trial court allowed to stand the testimony of a defense expert witness that the fire was arson-caused and that Dr. Pacheco and Mrs. Pacheco were the prime suspects.

The unprecedented deviation from existing case law which departure allowed the defendant to prove its case by less than clear and convincing evidence was, probably in and of itself, sufficient to bring about a defense verdict. The majority's approval of this majestic departure from established case law pales, however, in comparison to the wholly incomprehensible rationale by which the majority finds no error in allowing a defense expert witness to finger the Pachecos as the culprits. Certain there was more than enough to suggest to trained legal minds that it was clearly in order to reconsider the decision by which this Court's stamp of approval was endorsed upon such obvious highly prejudicial error. This Court has in many past instances readily accepted the constitutional requirement that the people of Idaho have access to the Courts. Most attorneys understand that implicit therein is the right, often spoken of by the late Justice Shepard, to at least a fair trial, if not a perfect one.

So that the trial bench and bar may better understand the Court's failure to reconsider its aberrant majority opinion, a decent respect for the two newest members of the Court requires that mention be made that the Court's rules require two votes in order to grant a rehearing. In this instance, when the votes were counted, as the Court's minutes of public record reflect, mine was the only vote to grant. Justice Shepard could not vote by reason of his untimely demise, Justice Huntley could not vote by reason of his untimely departure. The Court, although it has promulgated countless rules, has never made one to take care of the circumstance where, as here during two or three months this past summer, the Court happens to be reduced to only three justices who are entitled to vote by reason of their having been the only available three who were involved in the decision which is challenged by petition for rehearing. Otherwise put, the two new

members of the Court were by the Court's rules or custom disenfranchised from participating in the granting or denying of the petition for rehearing. Nor does the Court, as now constituted, show any inclination to forestall such a situation by now enacting a rule. Yet, there have been occasions when two or three of us have simultaneously occupied the same vehicle or aircraft and thereby exposed ourselves to the possibility of contemporaneously going to the Great Reward.