NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

SALVADOR HILARIO[1] MORENO, *Appellant*.

No. 1 CA-CR 22-0151
FILED 6-29-2023

Appeal from the Superior Court in Maricopa County
No. CR2019-003621-003
The Honorable Laura M. Reckart, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

The Hogle Firm PLC, Mesa
By Nathan Hogle
*Counsel for Appellant*

Salvador Hilario Moreno, Eloy
*Appellant*

---

[1] On the court's motion, it is ordered amending the caption in this appeal as reflected in this decision. The above-referenced caption shall be used on all further documents filed in this appeal.

---

**MEMORANDUM DECISION**

---

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge David D. Weinzweig joined.

---

**C A M P B E L L**, Judge:

¶1        This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised there are no meritorious grounds for reversal. Defendant Salvador Hilario Moreno was given the opportunity to file a supplemental brief and has done so.[2] Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Moreno, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶2        In May of 2019, Moreno and his adult son bought a pound of methamphetamine (meth) from their dealer, Laura.[3] After receiving the merchandise, they determined it was a bad batch of drugs. Left with an unsellable half-pound, Moreno began badgering Laura for a replacement.

¶3        A few days later, Laura texted to let him know she had "the good stuff" on hand, and Moreno became insistent:

> I need you to give me my half pound for the messed up stuff that you gave me and the two ounces you owe me and I want them today. . . . We're coming your way now. Have your people ready because I have mine with me.[4]

---

[2]        On the same day, Moreno postmarked both a "Motion To Proceed With 'Brief'; Without The Filing of A 'Supplemental Brief'" and an untitled document, in which he argued there was no credible evidence against him. In our discretion, we treat the latter filing as Moreno's supplemental brief.

[3]        We use a pseudonym to protect the identity of the witness.

[4]        Moreno texted in Spanish. The parties stipulated that the messages were "accurately translated and transcribed," and we use the translation provided to the jury.

Laura explained she could give them $150 for the two ounces owed, but her supplier wanted to see the half-pound before exchanging it. After pressure from Moreno and his son, Laura agreed to meet that night at a fast-food restaurant.

**¶4**     When he arrived, Moreno and an accomplice got in Laura's car and she handed Moreno $150.  Moreno then gave the accomplice the bag of impure meth and returned to his vehicle.  Both cars drove to Laura's supplier's apartment to exchange the meth. Once Laura's supplier joined them, the deal quickly went awry. By the time the police arrived, Moreno, his accomplice, and his son had fled, abandoning the bag containing the drugs under a bush. Police recovered the bag while investigating the scene.

**¶5**     A few days later, Moreno was *Mirandized*[5] and voluntarily spoke with a detective through a police interpreter. During questioning, Moreno admitted to meeting with Laura at the fast-food restaurant. However, he claimed he gave Laura $150 "for court or something," and then the accomplice left with Laura.

**¶6**     The State charged Moreno with one count of sale or transportation of dangerous drugs (meth), a class 2 felony. *See* A.R.S. § 13-3407(A)(7). Moreno's son and accomplice were also charged, but Moreno successfully severed his trial.

**¶7**     Before trial, Moreno filed a motion in limine seeking to exclude "any statements any alleged victim may make as to past incidents," such as "prior alleged drug deals." In response, the State conveyed its intent to introduce text messages between Moreno and Laura "discussing the sale of methamphetamine" in the days leading up to the exchange. Finding the texts were communications between co-conspirators, the court denied Moreno's motion. *See* Ariz. R. Evid. 801(d)(2)(E).

**¶8**      At trial, Laura testified for the State under an immunity agreement. The State called the investigating police officers and various experts. Moreno did not testify, but the State played a video of his police interview.

**¶9**     Evidence presented at the seven-day trial established, among other things, that (1) Moreno and his son communicated with Laura using a cell phone she provided; (2) cell-tower data placed the phone in Tolleson, near Moreno's home, just after 10:00 pm on the crime date, and then in Phoenix, near the crime scene less than an hour later; and (3) the bag

---

[5]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

recovered under the bush held 640.27 grams of filler loose inside, as well as 12.76 grams of meth contained in a smaller baggie inside the larger bundle.

¶10　　　　Moreno's counsel moved for judgment of acquittal based on insufficient evidence. *See* Ariz. R. Crim. P. 20. The court denied this motion. The jury found Moreno guilty as charged and found two aggravating circumstances. The superior court sentenced Moreno as a non-dangerous, non-repetitive offender, giving him a presumptive prison term of 10 years with 989 days of presentence incarceration credit.

¶11　　　　In his supplemental brief, Moreno argues there was no credible evidence against him, emphasizing "they didn't catch me with drugs" and accusing the State of "present[ing] false evidence."

¶12　　　　It is "fundamental error to convict a person for a crime when the evidence does not support a conviction." *State v. Stroud*, 209 Ariz. 410, 412, ¶ 6 n.2 (2005) (citation omitted). "We review the sufficiency of the evidence presented at trial only to determine if substantial evidence exists to support the jury verdict." *Id.* at ¶ 6. Sufficient evidence may exist even where conflicting evidence is presented, *State v. Flowers*, 110 Ariz. 566, 567 (1974), and may be circumstantial or direct, *State v. Pena*, 209 Ariz. 503, 505, ¶ 7 (App. 2005). We do not reweigh the evidence to determine whether we would reach the same conclusions as the trier of fact. *State v. Barger*, 167 Ariz. 563, 568 (App. 1990).

¶13　　　　Moreno was convicted of violating A.R.S. § 13-3407(A)(7), which provides that "[a] person shall not knowingly [t]ransport for sale, . . . offer to transport for sale, . . . sell, transfer or offer to sell or transfer a dangerous drug." *See also* A.R.S. § 13-3401(32) (defining "sale" as "an exchange for anything of value or advantage"), (37) (defining "transfer" as "furnish, deliver or give away"). Substantial evidence supports the verdict.

¶14　　　　The record shows Moreno bought a pound of meth from Laura, discovered it "w[as]n't good" when his buyers began complaining, and demanded she "give [him his] half pound for the messed up stuff that [sh]e gave [him]." On the date of the offense, Moreno traveled with the impure meth to meet with Laura. After she paid him $150 and agreed to bring them to her supplier's apartment, Moreno handed the drugs to his accomplice for safe-keeping. Investigating officers found a clear plastic bag, containing what was later confirmed to be meth and filler, at the scene. Filler aside, the bag held 12.76 grams of meth—over the statutory threshold. *See* A.R.S. § 13-3401(36)(e). Although the bag was taken from a bush at the scene rather than Moreno's person, there is sufficient evidence to show that

Moreno both transported for sale and transferred meth based on the circumstantial evidence. *See State v. Green*, 111 Ariz. 444, 446 (1975) ("There is no distinction in the probative value of direct and circumstantial evidence.").

**¶15**        Moreno also objects to Laura's testimony, arguing she "is the one that sells drugs" and "[t]he State is putting her charges on [him]." It is undisputed that Laura is a drug dealer; the State's theory of the case begins with her selling a pound of meth to Moreno. Laura's criminal history—including two prior convictions for possession of meth—was also presented to the jury. Laura was subject to cross-examination at trial, where Moreno's counsel pressed the issue of her participation and emphasized her role in both his opening and closing statements. The jury was well-aware that Laura sold drugs and had been granted immunity for her testimony, and could weigh Laura's credibility accordingly. *See State v. Holsinger*, 115 Ariz. 89, 93 (1977) (affirming jury's ability "to judge [witness] credibility in light of" a disclosed immunity agreement).

**¶16**        In any case, Moreno confessed to meeting Laura at the fast-food restaurant. He also agreed Laura owed him a half-pound of meth because the previous batch was bad, and she had promised to "make it right." Though his account diverges from the State's theory of the case, it is the jury's role to resolve conflicting evidence and weigh witnesses' credibility. *State v. Lee*, 217 Ariz. 514, 516, ¶ 10 (App. 2008).

**¶17**        Last, Moreno notes he "was not under investigation for selling drugs," "didn't have any criminal priors or felonies," "ha[d] a house with six kids and a wife," and "d[id his] taxes." None of this information negates the evidence presented at trial. To the extent that he argues the court erred in sentencing, we disagree. The court expressly "weighed the . . . *strong community and family support and lack of criminal history* against the aggravating circumstances that were found." (Emphasis added.) In any case, Moreno received the presumptive sentence. *See* A.R.S. § 13-3407(A)(7), (E).

**¶18**        After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Moreno was present and represented by counsel at all critical stages of the proceedings against him. As discussed, the evidence presented supports the conviction, and the

sentence imposed falls within the range permitted by law.[6] As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Moreno's constitutional and statutory rights. Therefore, we affirm Moreno's conviction and sentence.

**¶19** Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, his obligations are fulfilled once he informs Moreno of the outcome of this appeal and his future options. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Moreno has 30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[6] The court granted Moreno one more day of presentence incarceration credit than was warranted, but absent a cross-appeal by the State, we will not correct the sentence. *State v. Dawson*, 164 Ariz. 278, 286 (1990).